UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERAL TRADE COMMISSION, and the
STATE OF FLORIDA,

    Plaintiffs,

v.

VYLAH TEC LLC, et. al.,

    Defendants.

Case No. 2:17-cv-00228-UA-MRM

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO PARTIALLY LIFT ASSET FREEZE TO PROVIDE FOR DEFENDANTS' BASIC LIVING EXPENSES**

**I.    INTRODUCTION**

The Federal Trade Commission and the State of Florida strongly oppose the *emergency* motion of individual defendants Angelo, Robert, and Dennis Cupo ("Defendants") to partially lift the asset freeze to pay for Defendants' basic living expenses. Defendants have proposed an initial release of $10,000 in frozen assets, with the tacit expectation that, going forward, a monthly maximum for basic living expenses will be provided to Defendants. [28 at *5]. Defendants' *emergency* motion suggests that either extraordinary circumstances or a true and legitimate emergency exists to warrant the release of additional frozen assets to pay for Defendants' living expenses between now and the Court's preliminary injunction hearing scheduled for May 30, 2017. Despite this purported emergency, Defendants have not submitted any invoices or specified any impending bills to

suggest that funds should be unfrozen. Instead, Defendants have provided financial statements that reveal there are several alternative resources available to them for funding their basic living expenses, including funds from unfrozen assets, funds from other employers, and funds from other family members.

Since at least 2014, Defendants have fraudulently sold technical support services and products. Their ill-gotten gains have afforded them a lifestyle filled with luxury vehicles, such as an SUV Hummer and an SUV Range Rover, as well as expensive watercraft worth thousands of dollars. Additionally, Defendants' current monthly expenses include lease payments for a 2017 Mercedes E300, the amount of which is not disclosed in Defendants' financial statements, and a $2,000 per month luxury residential rental fee. These expenses are neither reasonable, nor necessary. Injured consumers should not be expected to forgo possible restitution to fund Defendants' lavish lifestyle.

## **MEMORANDUM OF LEGAL AUTHORITY**

Defendants' interest in having access to frozen funds to finance their lifestyle must be balanced against the government's interest in actively preventing the depletion of assets reserved for consumer redress. Here, the equities weigh strongly in favor of the public's interest in preserving frozen funds for injured consumers and strongly against the defendants' private interests of paying for their lifestyle via funds obtained through a deceptive scheme. Plaintiffs have a particularly strong interest in preserving the frozen assets because they represent only a small fraction of the overall consumer injury estimated in this case. Any siphoning of these funds will further limit the possible restitution available to the numerous consumers who have been defrauded by Defendants' deceptive practices.

## II. THE COURT SHOULD NOT RELEASE ANY FROZEN ASSETS TO ACCOMMODATE DEFENDANTS' LIVING EXPENSES

Pursuant to its broad equitable authority to issue injunctions under Section 13(b), the Court may order preliminary relief, including an asset freeze to make permanent relief possible. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984). The natural corollary to this rule is that a court may unfreeze those assets when equity requires. The Court has discretion to refuse to unfreeze assets so that a defendant can use those assets to pay for living expenses or attorney fees. *FTC v. IAB Marketing Associates, LP, et. al.,* 2013 U.S. Dist. LEXIS 133418 *14 (Sept. 18, 2013) (citing *FTC v. RCA Credit Services, LLC,* 2008 U.S. Dist. LEXIS 105070, 2008 WL 5428039 *4); *FTC v. USA Financial, LLC*, No 08-cv-899, 2008 WL 3165930, at *3 (M.D. Fla. July 21, 2008), *aff'd*, No. 10-12152, Fed. Appx. 970 (11th Cir. Feb. 25, 2011); *SEC v. ETC Payphones, Inc.*, 408 F. 3d 727, 734 (11th Cir. 2005). On a motion to release frozen funds, "the defendant's interest in having access to funds needed to pay ordinary and necessary living expenses . . . must be balanced against the government's interest in preventing the depletion of potentially forfeitable assets." *U.S. v. Their*, 801 F.2d 1463, 1474 (5th Cir. 1986) (overruled on other grounds, *U.S. v. Hold Land Foundation*, 493 F.3d 469 (5th Cir. 2007) (emphasis added)). Defendants argue the hardship of the asset freeze on them. However, similar to this case, the Southern District of Florida has denied a similar request to lift the asset freeze noting, "the Court appreciates that the asset freeze is difficult for the [Defendants] and that things would be much easier if they could access the money they gained at consumers' expense. But 'it is axiomatic that an asset freeze, set forth in the

interest of preserving illegal proceeds from dissipating before there has been a final disposition on the merits, may have unpleasant consequences for the defendant, including foreclosures on real estate, injury to legitimate business enterprises and other personal hardship.'" *IAB Marketing Assoc.*, 972 F. Supp. 2d 972, at 1314-15 (citing *SEC v. Schiffer*, 1999 U.S. Dist. LEXIS 9723, at *3 (S.D.N.Y. June 30, 1999)). "Equity favors the injured consumers over the Defendants who did the injuring and are now suffering the consequences of their conduct." *Id*. at 1315.

Here, it would be improper to release frozen funds to Defendants for living expenses because: (1) the FTC and the State of Florida are likely to prevail on the merits; (2) any release of frozen funds would lessen the amount needed to provide injured consumers with full and effective relief, and would deplete the assets available for potential victims; (3) the defendants are asking to live off funds wrongfully collected; (4) their requests are neither reasonable, nor necessary; and (5) defendants have other options to pay for their living expenses.

Additionally, when weighing the equities of releasing funds for living expenses, the Defendants' interest in paying living expenses does not automatically control. *Their,* 801 F.2d at 1475. Instead, the Court should consider a variety of factors. Reasons to preserve frozen assets include, the likelihood that the plaintiff will prevail on the merits, *FTC v. World Travel Vacation Brokers, Inc.* 861 F.2d 1020, 1031 (7th Cir. 1988), "if frozen assets fall short of the amount needed to compensate consumers for their losses," and situations "where the defendant has other sources of income". *USA Financial,* 2008 U.S. Dist. LEXIS 59980, at *10-11 (citation omitted); *see also World Travel Vacation Brokers, Inc.,* 861F.2d at 1031

(courts should "ensure the assets [remain] available to make restitution to the injured customers"); *SEC v. Alejandro Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 430 (S.D.N.Y. 2001) (among the factors considered by the court in denying a release of frozen assets for personal expenses was the defendant voluntarily waived a salary from his law firm). A defendant's request for luxuries is another reason to forbid the release of funds for living expenses, *see SEC v. Private Equity Mgmt. Group, Inc.*, No 09-2901, 2009 U.S. Dist. LEXIS 64724, at *9 (C.D. Cal. July 9, 2009) (citation omitted), as is the inability of a defendant to show that any of their personal earnings were derived from any alleged ill-gotten gains. *See USA Financial*, 2008 U.S. Dist. LEXIS 59980 at *3. As discussed below, the factors the Court must balance when determining whether to exercise its discretion to pay for living expenses strongly mitigate against the release of any frozen funds.

### A. Plaintiffs are Likely to Prevail on the Merits

In exercising its discretion of whether to refuse to lift or partially lift an asset freeze, the Court must take into account the FTC's and the State of Florida's probable success on the merits. *See FTC v. World Wide Factors, Ltd.,* 882 F.2d 344, 346 (9th Cir. 1989). Here, Plaintiffs are likely to succeed on the merits for at least two reasons. First, this Court has evaluated volumes of evidence in support of Plaintiffs' proposed TRO and found sufficient evidence to show that Defendants have engaged in, and are likely to engage in, acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Section 501.204 of the Florida Deceptive and Unfair Trade Practices Act. Moreover, Defendants have yet to provide any evidence to controvert the voluminous record of Defendants' deceptive

practices. As a result, Plaintiffs are likely to prevail on the merits of this action. [DE 9 at ¶2].

Second, Defendants do not dispute that they should be restrained from making the misrepresentations prohibited by the TRO. Defendants have conceded that they are "agreeable to an injunction not to violate the law," "not to use pop-up ads," and "not to use misleading call scripts and sales tactics." [DE 32 at *6]. Defendants have offered no evidence to suggest that Plaintiffs will not succeed on the merits, nor have they indicated that they will present an actual defense to liability concerning the counts alleged in Plaintiffs' Complaint. Thus, this factor weighs against a release of living expenses to Defendants.

## B. Equity Requires Preserving All Frozen Funds for Consumer Redress

When frozen assets are less than the amount needed to compensate consumers for their losses, a district court can properly refuse to unfreeze assets. *IAB Marketing Associates, et. al.*, 972 F. Supp. 2d 1307, at *14 (citing *RCA Credit Services, LLC 2008 U.S. Dist. LEXIS 105070, 2008 WL 5428039,* at *4.) That is because one purpose of the asset freeze is to ensure that funds are available to provide consumers redress and deprive wrongdoers of their ill-gotten gains. *Id.* Here, the approximate amount of consumer injury is over $1.8 million, while the current amount of frozen funds is only $687,000.[1] Consumer loss thus greatly exceeds the funds currently available for the defendants to provide consumer redress. Under these circumstances, it would be inequitable to allow Defendants to further deplete any frozen funds—whether personal or receivership assets—and thereby continue to benefit from

---

[1] The amount of frozen funds is based on a calculation of the frozen amounts identified by various financial institutions, less amounts unfrozen by the Court to allow Defendants to pay for legal counsel [DE 21] and to unfreeze accounts held by Complete Dealer Services LLC [DE 41]. In Defendants' motion, however, Defendants assert a significantly higher asset freeze amount of $900,000. In light of this discrepancy, there may be additional frozen assets that have not been disclosed to Plaintiffs.

their unlawful gains.  *See USA Financial*, 2008 U.S. Dist. LEXIS 59980 at *8; *World Travel Vacation Brokers, Inc.*, 861 F.2d at 1031 (courts should "ensure the assets [remain] available to make restitution to the injured customers").

Further, Defendants erroneously suggest that a portion of the frozen assets is connected with "legitimate" activity of Defendants and should therefore not be included in the amount of assets frozen to redress consumers.  This argument is flawed both factually and legally.  First, Plaintiffs' findings during the immediate access to Defendants' business property indicate that Defendants have continued to use deceptive misrepresentations and scripted computer diagnoses to sell consumers unwanted computer software.  In the instant motion, Defendants attempt to distinguish between consumers who contact Defendants to activate subscription-based services from consumers who have contacted Defendants via Defendants' pop-up messages.  In truth, Defendants have subjected both types of consumers to the <u>same</u> deceptive, deterministic sales scripts and illusory diagnoses that are at the core of Defendants' misleading business practices.  The only difference is Defendants' are using their list of subscription-based customers as a ready-made lead list to target victims, rather than using pop-up messages to lure victims into contacting them.

In addition to Defendants' flawed notion of the facts, the legal undercurrent of Defendants' argument wrongly suggests that tracing assets is required for an asset freeze. There is no requirement that frozen assets be traceable to the fraudulent activity underlying the lawsuit.  *S.E.C. v. ETS Payphones, Inc*., 408 F. 3d 727, 735-36 (11th Cir. 2005); *Kemp v. Peterson*, 940 F.2d 110 (4th Cir. 1991); *SEC v. Current Fin. Servs*., 62 F. Supp. 2d. 66 (D.D.C. 1999); *SEC v. Grossman*, 887 F.Supp. 649, 661 (S.D.N.Y.1995) (holding that "[i]t is

irrelevant whether the funds affected by the Assets Freeze are traceable to the illegal activity, [where defendants] are jointly and severally liable"); *See also SEC v. Glauberman*, No. 90 Civ. 5205, 1992 WL 175270, at *2 (S.D.N.Y. Jul. 16, 1992) (rejecting the argument that disgorgement is not appropriate because "the challenged transfers cannot be traced dollar for dollar to profits from insider trading"); *FTC v. Bronson Partners*, LLC, 654 F.3d 359, 373 (2d Cir. 2011) (disgorgement does not require tracing). Furthermore, a defendant should not benefit from the fact that other assets were commingled with illegal profits. *SEC v. Glauberman*, 1992 WL 175270, at *2 (S.D.N.Y. July 16, 1992); *see also FTC v. Am. Precious Metals, LLC*, Civil Action No. 11-61072-Civ-Scola, 2017 U.S. Dist. LEXIS 54470, at *6 (S.D. Fla. Apr. 10, 2017) (stating that although fraudulently obtained funds were commingled with legitimately obtained funds, the commingling of funds does not defeat a claim for an equitable lien).

Indeed, "tracing an asset to the illegal activities of the defendant is not a prerequisite to distributing that asset as part of an order of consumer redress under § 13(b)." *FTC v. Home Assure, LLC,* No. 8:09-cv-547-T-23TBM, 2009 WL 1043956, at *3, n. 14 (M.D. Fla. Apr. 16, 2009) (quoting *FTC v. Windward Mktg., Ltd.*, No. 1:96-cv-615 FMH, slip op. at 5-6 (N.D.Ga.1997)). Otherwise, a defendant who was careful to spend all the proceeds of his fraudulent scheme, while husbanding his other assets, would be immune from a collection. *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1369 (S.D. Fla. 2006); *FTC v. IAB Mktg. Assocs., LP*, No. 12-61830-Civ, 2013 WL 5278216, at *7 (S.D. Fla. Sept. 18, 2013); *FTC v. J.K. Publ'ns, Inc.*, No. CV 99-00044, 2009 WL 997421, at *5 (C.D. Cal. Apr. 13, 2009) (such a rule would lead to the "absurd result" of immunizing defendants who transferred all assets from a

scheme). The amount of assets to be frozen should be determined by showing a reasonable approximation of the amount, with interest, that the defendants were unjustly enriched. *Lauer*, 445 F. Supp. 2d at 1370; *IAB Mktg. Assocs.*, 2013 WL 5278216 at *7.

Just as equity would not permit a bank robber to use the proceeds of his robbery for living expenses, equity would not permit the defendants to use the proceeds of their deceptive scheme for living expenses. *S.E.C. v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993); *U.S. v. Monsanto*, 491 U.S. 600 (1989); *Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617 (1989). It is contrary to the public interest to provide Defendants living expenses from the money wrongfully collected by their companies, particularly where the frozen funds would be used to pay for expensive vehicles, recreational watercraft, and high-cost residential properties.

### C. Defendants' Request is Neither Reasonable Nor Necessary

Plaintiffs further oppose any release of living expenses to Defendants because it would wrongly necessitate injured consumers to forgo any chance of redress in order to finance Defendants' lavish lifestyle, and it ignores the fact that Defendants can sustain themselves by using unfrozen assets or by seeking other employment. If a court releases frozen funds for expenses, the expenses must be limited to amounts that are both reasonable and necessary. *See e.g., Noble Metals*, 67 F.3d 775, n.8; *H.N. Singer, Inc.*, 668 F.2d at 1111-12; *Amy Travel Service*, 875 F.2d at 570. In this instance, the expenses are neither reasonable nor necessary. For example, the financial statement of individual Defendant Angelo Cupo discloses that his current monthly expenses exceed his income by over two-thousand dollars. These expenses include $2,000 for rent and $1,000 for food alone. His

debt includes heavily financed, top-of-the line jet skis and a lease for a Mercedes E300 vehicle. The unreasonable expectation here is that injured consumers will supplement the preexisting shortfall in his personal finances under the guise of there being an emergency that requires the release of consumers' assets. At the same time, Defendant Angelo has provided no information about his efforts to find gainful employment while this case is pending.

Likewise, Defendants' request is unreasonable with respect to individual Defendant Robert Cupo. First, the financial statements of Defendant Robert disclose that his spouse appears to hold $6,500 in unfrozen assets. With these assets available to Defendant Robert and his likely ability to obtain gainful employment elsewhere, it would not be reasonable or necessary to release frozen assets to fund his living expenses.

Defendants' request is equally unreasonable with respect to individual Defendant Dennis Cupo, who has been instrumental in obtaining credit card processing accounts to facilitate Defendants' scheme amid growing chargeback concerns and account closures with other processors. By the instant motion, Defendant Dennis is requesting the Court to unfreeze $1,500 of his personal frozen funds for basic living expenses. This request is puzzling because Defendant Dennis is employed by an unrelated company and he currently receives an average of $1,000 per week in fees, commissions, and royalties. Moreover, his financial statements reveal a total of $4,500 in monthly income, which is more than enough to cover his identified monthly expenses of $2,435. There is no reasonable basis to release consumer assets to Defendant Dennis, who is already well funded.

Finally, Defendants rely on a single FTC action in which a district court permitted an individual defendant to obtain $12,000 per month for living expenses. *See FTC v. End70*

*Corp.*, *et. al.*, Civil Action No. 3:03-CV-0950-N, 2003 U.S. Dist. LEXIS 13384 (N.D. Tex. July 31, 2003). Ultimately, in that proceeding the parties entered into an order that imposed a $36 million monetary judgment, which was suspended less $500,000 that the individual and corporate defendants were required to pay for consumer redress.[2] In the instant case, if Defendants were permitted to obtain $10,000 from frozen assets plus an ongoing monthly stipend, consumer redress here would also fall exceedingly short of the amount owed to consumers. Such an outcome is neither reasonable nor necessary, particularly given the resources available to Defendants and the inadequacy of existing frozen funds to cover consumer injury.

### III. DEFENDANTS' RELIANCE ON *LUIS* FOR THE RELEASE OF CONSUMERS' ASSETS TO FUND DEFENDANTS' LIFESTYLE IS MISPLACED

Defendants cite to *Luis v. United States*, 136 S.Ct. 1083 (2016), for the proposition that the Court should partially unfreeze the assets. The *Luis* case is distinguishable for multiple reasons. First, *Luis* involved a pretrial asset freeze under a criminal statute, which does not apply to assets held by receivers in civil cases. *United States v. Johnson*, No. 2:11-CR-501-DN, 2016 WL 4087351 (D. Utah July 28, 2016) (FTC defendant who was subsequently convicted in an unrelated criminal action denied retrial). Moreover, *Luis* does not apply if a defendant has not shown he cannot fund his defense from unfrozen assets. *FTC v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4182726, at *1 (E.D. Tex. Aug. 8, 2016). Finally, *Luis* is distinguishable because Defendants here are seeking discretionary living expenses, rather than invoking a constitutionally based right to counsel in a criminal

---

[2] *See FTC v. End70 Corp.*, *et. al.*, *Stipulated Final Judgment and Order for Permanent Injunction and Monetary Relief*, Civil Action, No. 3:03-CV-0950-N, (N.D. Tex. Dec. 11, 2003), available at https://www.ftc.gov/sites/default/files/documents/cases/2004/01/031211end70stip.pdf.

proceeding, and Defendants have already received unfrozen assets to obtain legal counsel in this case. [DE 21].

IV.     **CONCLUSION**

For the foregoing reasons, the FTC and the State of Florida respectfully request that, in the interests of equity and complete justice, the Court preserve frozen funds for victim compensation and deny the Defendants' Emergency Motion to Partially Lift Asset Freeze to Provide for Defendants' Basic Living Expenses.

Dated: May 26, 2017

Respectfully submitted,

DAVID C. SHONKA
Acting General Counsel

*/s/ Sana C. Chriss*
ROBIN L. ROCK
Trial Counsel
SANA C. CHRISS
Trial Counsel
Federal Trade Commission
Southeast Region
225 Peachtree Street, N.E., Suite 1500
Atlanta, GA 30303
Telephone:   404-656-1368 (Rock)
             404-656-1364 (Chriss)
Facsimile:   404-656-1379
Email:  rrock@ftc.gov; schriss@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


PAMELA JO BONDI
ATTORNEY GENERAL
STATE OF FLORIDA

*/s/ Genevieve Bonan*
By: Genevieve Bonan
Assistant Attorney General
Fla. Bar No. 109539
Office of the Attorney General
Consumer Protection Division
Genevieve.Bonan@myfloridalegal.com
1515 N. Flagler Drive, Ste. 900
West Palm Beach, FL 33401
Phone: (561) 837-5007


Attorneys for Plaintiff
STATE OF FLORIDA