UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERAL TRADE COMMISSION and
STATE OF FLORIDA,

     Plaintiffs,

v.                             Case No:  2:17-cv-228-FtM-99MRM

VYLAH TEC LLC, EXPRESS TECH
HELP LLC, TECH CREW SUPPORT
LLC, ANGELO J. CUPO, ROBERT
CUPO and DENNIS CUPO,

     Defendants.

_____/

### PRELIMINARY INJUNCTION ORDER[1]

     This matter comes before the Court on Plaintiffs Federal Trade Commission ("FTC") and State of Florida's *ex parte* motion for a temporary restraining order and for an order to show cause why a preliminary injunction should not be issued. (Doc. 4). Defendants Vylah Tec LLC, Express Tech Help LLC, Tech Crew Support LLC, Angelo Cupo, Robert Cupo, and Dennis Cupo have filed a Response to the Temporary Restraining Order (Doc. 32), to which Plaintiffs filed a reply (Doc. 43). Also before the Court is Defendant's Emergency Motion to Partially Lift Asset Freeze to Provide for

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Defendants' Basic Living Expenses. (Doc. 28). Plaintiffs have filed a response in opposition to Defendant's motion. (Doc. 46). In addition, the undersigned held a hearing on the preliminary injunction and emergency motion, at which time the parties argued their respective positions. (Doc. 51). Thus, this matter is ripe for review.

## BACKGROUND

Defendants provide two types of services. First, they operate an inbound call center 24 hours a day and 7 days a week that provides prepaid technical support services to Home Shopping Network ("HSN") and QVC channel customers based on technical support contracts that were bundled with consumer electronics sold by HSN and QVC. Under these prepaid contracts, Defendants, through a contract with third-party Avanquest, provide telephonic and computer-to-computer technical support for issues like equipment set up, troubleshooting, and installing software on various devices. Second, to these customers, Defendants sell computer security or antivirus software that are bundled with other computer utility software. The crux of Plaintiffs' Complaint is the antivirus software sales side of the business and concerns the scripted sales pitch to consumers.

Plaintiffs bring this suit, however, alleging that Defendants have engaged in a deceptive technical support scam operating nationwide. (Doc. 2). According to Plaintiffs, Defendants have falsely claimed to consumers that they are affiliated with well-known American technology companies such as Microsoft and are certified or authorized to service the companies' products. Defendants also have allegedly misrepresented to consumers that they detected security or performance issues on the consumers' computers, including system errors, viruses, spyware, malware, or the presence of

hackers that require them to purchase Defendants' computer technical support services and security software. Since mid-2014, Defendants have allegedly deceived consumers of more than $1.8 million.

Because of Defendants' alleged conduct, Plaintiffs have initiated this action for violations of the Federal Trade Commission ("FTC Act"), 15 U.S.C. § 45(a) and the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201 *et seq.* They contend that consumers have suffered considerable injury due to Defendant's violations and that Defendants have been unjustly enriched due to the false and deceptive practices they have perpetrated. Plaintiffs, therefore, seek relief to prevent Defendants from continuing to profit from injuring consumers and harming the public interest.

When Plaintiffs filed the Complaint, they also moved *ex parte* for a temporary restraining order. The Court issued a Temporary Restraining Order ("TRO"), appointed a receiver of the corporate Defendants, and froze Defendants' assets. (Doc. 9). It also ordered Defendants to show cause why a preliminary injunction order should not be entered.

Prior to the TRO expiring, the Court held a hearing where all Defendants were present and represented. The parties argued their respective positions as well as presented evidence in the form of declarations, reports, and other documents. The evidence is too numerous and too lengthy to detail here. But the Court has reviewed and considered all of the evidence, as well as subsequent filings. Below, the Court will discuss pertinent parts of that evidence as necessary.

**LEGAL STANDARDS**

Section 13 of the FTC Act gives a court the authority to grant a preliminary injunction. 15 U.S.C. § 53(b). A court may also grant ancillary relief, including freezing assets and appointing a receiver. *See F.T.C. v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984). The court may issue a preliminary injunction if the FTC proves (1) a likelihood of ultimate success on the merits; and (2) that the balancing of equities favors such action. *See F.T.C. v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1232 (11th Cir. 2014) (citing *F.T.C. v. Univ. Health, Inc.*, 938 F.2d 1206, 1217 (11th Cir. 1991)).

"Unlike private litigants, the FTC need not demonstrate irreparable injury in order to obtain injunctive relief," *IAB Mktg. Assocs.*, 746 F.3d at 1232, and the FTC need not prove a "substantial" likelihood of success, *Univ. Health*, 938 F.2d at 1217-18. The reduced burden only requires the court to consider the FTC's likelihood of ultimately succeeding on the merits and a balance of equities between the parties. When balancing the equities, the court must keep in mind that injunctive relief "is appropriate if the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future"; however, such relief may not be appropriate in instances where the defendant's actions are unlikely to recur. *See F.T.C. v. USA Fin., LLC*, 415 F. App'x 970, 975 (11th Cir. 2011). "At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction if the evidence is appropriate given the character and objectives of the injunction proceeding." *Levi Straus & Co. v. Sunrise Intern. Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation marks and citation omitted).

Section 5 of the FTC Act provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a)(1); *see also* Fla. Stat. § 501.204(1) (prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce"). To establish § 5 liability, the FTC must show that "(1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." *F.T.C. v. Tashman,* 318 F.3d 1273, 1277 (11th Cir. 2003) (citations omitted). In deciding § 5 liability, it is irrelevant whether the service sold provided value to the consumer: "the salient issue in fraudulent-misrepresentation cases 'is whether the seller's misrepresentations tainted the customer's purchasing decisions,' not the value (if any) of the items sold." *F.T.C. v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1235 (11th Cir. 2014).

Against these standards, the Court will turn to Plaintiffs' request for a preliminary injunction.

## DISCUSSION

At issue before the Court is not whether Plaintiffs have made the requisite showing for a preliminary injunction. That is because Defendants do not object to a limited preliminary injunction. Instead, the parties square off over the terms of a preliminary injunction and asset freeze. The Government wants the status quo – convert the terms of the TRO to the preliminary injunction. Those terms include the total asset freeze and complete shutdown of Defendants' business. However, Defendants want to restart their business operations in order to meet their contractual obligations. And to facilitate the restart and to support operations, they request $100,000 be released from the asset

freeze.  Defendants also seek additional funds to be unfrozen in order to pay for their living expenses.  Because the parties have effectively stipulated to a preliminary injunction, the Court focuses on the terms of the order.

After considering the record, arguments, and applicable law, the Court finds itself at a crossroads.  Defendants' path leads the Court to restarting the business.  The restart will include allowing them to offer computer technical support services and computer software for sale, provided that the receiver (1) reviews and approves the services and software offered; and (2) approves any sales scripts employees would use when selling computer technical support services and software.  But the Receiver's reports cast a shadow over this path.  (Doc. 49-1; Doc. 54).  The Receiver opines, among other things, that Defendants' business cannot operate profitably using the assets of the receivership estate without significant advances.  He reports that he "cannot recommend, in good faith, recommencement of operations without significant consideration of the lawfulness of the software sales program, clearly defined operating and accounting controls which presently suffers from significant deficiencies, and, of course, a fully supported and operating proforma."  (Doc. 49-1 at 8).  Also, according to the Receiver, it is unlikely the business can operate lawfully as presently structured; the costs of the restart and continued operations would deplete Defendants' assets available for possible restitution; and the future contracts Defendants wish to enter are not reliable prospects to make Defendants profitable.  (Doc. 49-1).

The Government's path, which would lead the Court to continue shutting down Defendants' business and freezing their assets, likewise is a rough road.  According to Defendants, only fractions of their customers who call the technical support service are

upsold security software.  Defendants argue they have changed their practices in the last few years rendering much of Plaintiffs' suit superfluous.  They also maintain the thinness of Plaintiffs' case was shown by Plaintiffs playing at the hearing the recording of an upsell call that occurred seventeen months ago and that the customer declined purchasing the software.  And Defendants stress that the complete shutdown has unduly harmed the existing thousands of customers who prepaid for Defendants' technical support services through a bundled deal offered by HSN, QVC, and Evine.

At this stage, the Court finds that Defendants' business should not be allowed to reopen.  Defendants made sound arguments that restarting its business with safeguards to prevent further misrepresentations and improper sales practices will accomplish the goal of a preliminary injunction.  The Court, however, puts great weight on the Receiver's reports.  As outlined above, the Receiver cannot in good faith recommend restarting operations:

> [Defendants'] proposal to restart operations ignores the significant time, effort, and capital required to do so.  The information and responses by [Defendants], to date, regarding the revenue it could reasonable expect from restarted operations are speculative and lack the support necessary to reasonably determine that such a restart would be profitable.  Any contribution of Receivership cash resources places those resources at significant risk of loss due to a failure to demonstrate reasonable probability of profitability.

(Doc. 54-1 at 7).  Given the Receiver's reports and supporting evidence, the Court weighs the equities in favor of not allowing Defendants' business to reopen.  This finding is even more important because reopening Defendants' business will result in less money being available to compensate alleged victims of Defendants' activities.  Defendants cite to *F.T.C. v. Inbound Call Experts, LLC*, No. 14-81395-CIV, 2014 WL 8105107 (S.D. Fla. Dec. 23, 2014), to support its position on a limited preliminary injunction.  Although the

facts in *Inbound* are mostly analogous, there is one distinguishing fact that makes a difference – the defendants' assets more than covered the amount of damages at issue. This meant that the court was able to allow the business to reopen without concern that there would be money available for a potential recovery. The Court does not have that assurance here. There is approximately $620,000 in the receivership estate to date, and the Receiver has incurred over $125,000 in costs and attorney's fees for the first month of his tenure which has not yet been deducted. (Doc. 54). Adding operational costs to a business that will not run profitably will only further siphon from the existing assets.

Accordingly, for the reasons stated, the Court will enter a preliminary injunction. If Defendants and the Receiver can agree on a joint plan of operation to restart Defendants' business after this issuance of this Order, the Court will entertain arguments on modifying this Order.

## CONCLUSION

The Court has considered arguments of counsel, the Receiver's reports, the Complaint, declarations, exhibits, and the memorandum of law filed in support thereof, and being otherwise advised, **ORDERS** that the Temporary Restraining Order (Doc. 9) is extinguished, effective immediately, and replaced with the following preliminary injunction:

## PRELIMINARY INJUNCTION

### I. DEFINITIONS

For the purpose of this Order, the following definitions apply:

1. **"Assets"** mean any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property of any Corporate Defendant or Individual

Defendant or held for the benefit of any Corporate Defendant or Individual Defendant wherever located, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, premises, contracts, mail or other deliveries, shares of stock, list of customer names, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including but not limited to any other trust held for the benefit of any Corporate Defendant or Individual Defendant, any Individual Defendant's minor children, or any Individual Defendant's spouse.

2. **"FTC"** or **"Commission"** means the Federal Trade Commission.

3. **"Corporate Defendants"** mean Vylah Tec LLC, Express Tech Help LLC, and Tech Crew Support LLC (collectively, "Corporate Defendants"), and their successors, assigns, affiliates, or subsidiaries.

4. **"Defendant" or "Defendants"** means, individually, collectively or in any combination: (a) each Corporate Defendant; and (b) each Individual Defendant;

5. **"Document" or "Documents"** is synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, Internet sites, Web pages, Web sites, electronic correspondence, including e-mail and instant messages, photographs, audio and video recordings, computer records, contracts, accounting data, advertisements (including, but not limited to, advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed

records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

6. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information.

7. **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

8. **"FTC Act"** means the Federal Trade Commission Act codified at 15 U.S.C. §§ 41-58.

9. **"Individual Defendants"** means Angelo Cupo, Robert Cupo and Dennis Cupo.

10. A **"Host"** or **"Hosting Company"** is the party that provides the infrastructure for a computer service. With respect to web pages and web sites, a Host or Hosting Company maintains "Internet servers" – the computers on which web sites, web pages, Internet files, or resources reside. The Host or Hosting Company also maintains the communication lines required to link the server to the Internet. Often, the content on the servers (*i.e.,* content of the web pages) is controlled by someone other than the Host or Hosting Company.

11. **"Person"** means a natural person, organization, or other legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

12. **"Plaintiffs"** mean the FTC and the State of Florida.

13. **"Receiver"** means the person appointed as receiver per Section IX of this Order and any deputy receivers who the Receiver names.

14. **"Receivership Defendants"** mean the Corporate Defendants.

15. **"Tech Support Product or Service"** means any plan, program or software marketed to repair, maintain, or improve a computer's performance or security, including registry cleaners, anti-virus programs, fire wall programs, and computer or software diagnostic services.

## II. PROHIBITED MISREPRESENTATIONS

**IT IS ORDERED** that Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are restrained and enjoined from directly or indirectly misrepresenting, expressly or by implication, any material fact, including that (1) they are part of or affiliated with well-known U.S. technology companies, such as Microsoft, or are certified or authorized by these companies to service their products; and (2) they have detected security or performance issues on consumers' computers, including system errors, viruses, spyware, malware, or the presence of hackers.

### III.   CUSTOMER LISTS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, social security number, credit card number, debit card number, bank account number, e-mail address, or other identifying information of any person who paid any money to any Defendant, at any time prior to entry of this Order, in connection with the telemarketing, advertising, promoting, offering for sale, and selling of computer services. *Provided, however*, that Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order. Defendants are also restrained and enjoined from making any use of their own customer lists in any business, whether or not related to the present action.

### IV.   ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, consumer lists, shares of

stock, or any other assets, or any interest therein, wherever located, including outside the United States, that are:

1. owned, controlled, or held, in whole or in part, by any Defendant;

2. held, in whole or in part, for the direct or indirect benefit of any Defendant;

3. in the actual or constructive possession of any Defendant;

4. owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, including, but not limited to, any entity acting under a fictitious name owned by or controlled by any Defendant and any Assets held by, for, or under the name of any Defendant at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, payment processing company, precious metal dealer, or other financial institution or depository of any kind;

B. Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant, or subject to access by any of them;

C. Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant;

D. Obtaining a personal or secured loan titled in the name of any Defendant, or subject to access by any of them; and

E.  Incurring liens or other encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Defendant.

Except as provided in this subsection, the Assets affected by this Section include (1) all Assets of each Defendant as of the time this Order is entered; and (2), those Assets obtained after this Order is entered that are derived, directly or indirectly, from Defendants' conduct prohibited in Section I of this Order.  The Assets *not* affected by this Section are (1) a **total of $20,000** that the Court now orders to be released so Defendants Robert and Angelo Cupo may pay their necessary and reasonable living expenses during the pendency of this preliminary injunction; and (2) **$1,500** of Defendant Dennis Cupo's personal frozen funds that the Court also now orders to be released.

## V.  FINANCIAL REPORTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that each Individual Defendant and the Corporate Defendants, *to the extent not already provided* and in no event later than three (3) days of receiving this Order, must provide the FTC with completed financial statements, verified under oath and accurate as of the date of entry of this Order, on the forms attached to the Temporary Restraining Order (Doc. 9) as Attachment A for the Corporate Defendants and Attachment B for each Individual Defendant.  The financial statements must include a full accounting of all funds and assets, whether located inside or outside of the United States, that are (1) titled in the name of any Defendant, jointly, severally, or individually; (2) held by any person or entity for the benefit of any Defendant; or (3) under the direct or indirect control of any Defendant.

## VI.  DUTIES OF FINANCIAL INSTITUTIONS AND
## OTHER THIRD PARTIES TO RETAIN ASSETS AND RECORDS

**IT IS FURTHER ORDERED** that, *except as provided in Section IV*, any financial or brokerage institution or depository, escrow agent, title company, commodity trading company, trust, entity, or person that holds, controls, or maintains custody of any account or asset owned or controlled, directly or indirectly, by any Defendant(s), or has held, controlled, or maintained any account or asset of, or on behalf of, any Defendant(s), upon service with a copy of this Order, shall:

A.  Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Asset, as well as Documents or other property related to such Assets, except by further order of this Court;

B.  Deny any person, except the Receiver acting pursuant to Section IX of this Order, access to any safe deposit box, commercial mailbox, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C.  Provide Plaintiffs' counsel and the Receiver, within three (3) business days after being served with a copy of this Order, a sworn statement setting forth:

1.  the identification number of each such account or asset titled (1) in the name, individually or jointly, of any Defendant; (2) held on behalf of, or for the benefit of, any Defendant; (3) owned or controlled by any Defendant; or (4) otherwise subject to access by any Defendant, directly or indirectly;

2.  the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served;

3.  the identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name of any Defendant, or is otherwise subject to access by any Defendant; and

4.  if an account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on such date, and the manner in which such account or asset was closed or removed.

D.  Provide Plaintiffs' counsel and the Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee.

## VII.    FOREIGN ASSET REPATRIATION

**IT IS FURTHER ORDERED** that, *to the extent not already provided* and in no event later than three (3) business days of receiving this Order, the Corporate Defendants and each Individual Defendant must:

A.  Provide the FTC with a full accounting, verified under oath and accurate as of the date of this Order, of all funds, documents, and assets outside of the United States which are: (1) titled in the name, individually or jointly, of any Corporate

Defendant or Individual Defendant; or (2) held by any person or entity for the benefit of any Corporate Defendant or Individual Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Corporate Defendant or Individual Defendant;

B. Transfer to the territory of the United States all funds, documents, and assets located in foreign countries that are (1) titled in the name individually or jointly of any Corporate Defendant or Individual Defendant; or (2) held by any person or entity, for the benefit of any Corporate Defendant or Individual Defendant; or (3) under any Corporate Defendant's or Individual Defendant's direct or indirect control, whether jointly or singly;

*Provided, however,* any Defendant who currently does not hold an account at a financial institution located in the United States must repatriate all assets and funds to this Court's Registry.

C. To the extent not already done, provide the FTC access to all records of accounts or assets of each Corporate Defendant and Individual Defendant held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to the Temporary Restraining Order as Attachment C.

## VIII.   INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants are restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section VI of this Order, including but not limited to:

A. Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that all assets have been fully repatriated pursuant to Section VII of this Order;

B. Notifying any trustee, protector or other agent of any foreign trust or other related entities of the existence either of this Order or the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section VII of this Order.

## IX. CONTINUATION OF RECEIVER

**IT IS FURTHER ORDERED** that the appointment of **Barry Mukamal** as Receiver for the business activities of the Receivership Defendants with the full power of an equity receiver shall continue until further order of the Court. The Receiver will be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order. The Receiver is accountable directly to this Court. The Receiver must comply with any laws and Local Rules of this Court governing receivers.

## X. DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A. Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants,

including any named Defendant, from control of, management of, or participation in the affairs of the Receivership Defendants;

B. Take exclusive custody, control, and possession of all assets, documents, and electronically stored information of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. *Provided, however,* that the Receiver shall not attempt to collect or receive any amount from a consumer if the Receiver believes the consumer was a victim of the unlawful conduct alleged in the complaint in this matter;

C. Take all steps necessary to secure the business premises of the Receivership Defendants. Such steps may include, but are not limited to, the following, as the Receiver deems necessary or advisable:

1. serving this Order;

2. completing a written inventory of all Receivership Assets;

3. obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords;

4. videotaping and photographing all portions of the location;

5. securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location;

6. requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, and to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants; and

7. requiring all employees, independent contractors, and consultants of the Receivership Defendants to complete a questionnaire submitted by the Receiver;

D. Conserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

E. Liquidate any and all assets owned by or for the benefit of the Receivership Defendants that the Receiver deems to be advisable or necessary;

F. Enter into or break contracts and purchase insurance as the Temporary Receiver deems to be advisable or necessary;

G. Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Defendants;

H. Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

J. Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K. Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

L. Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M. Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Defendants, that the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

N. Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided, however,* that the continuation and conduct of the business, if done at all, shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the assets of the receivership estate;

O. Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver;

P. Open one or more bank accounts in the Middle District of Florida as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account(s);

Q. Maintain accurate records of all receipts and expenditures that the Receiver makes as Receiver; and

R. Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

## XI. RECEIVER'S ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that:

A. *To the extent not already done*, Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive this Order by personal service or otherwise, whether acting directly or indirectly, must:

  1. Immediately identify to FTC's counsel and the Receiver:

     a. All of Receivership Defendants' premises, whether residential or non-residential, including all locations from which Receivership Defendants conducts business, maintain sales operations, or maintain customer service operations;

     b. All locations of documents or electronically stored information related to Receivership Defendants, including but not limited to the name and location of any electronic data hosts; and

c. All locations where assets belonging to Receivership Defendants are stored or maintained;

2. Allow the Receiver, and his representatives, immediate access to:

   a. All of Defendants' business premises, including but not limited to, those located at 2891 CENTER POINTE DR,  FORT MYERS, FL 33916 and such other business locations that are wholly or partially owned, rented, leased, or under the temporary or permanent control of any Defendant;

   b. Any other non-residence premises where Defendants conduct business, collections operations, or customer service operations;

   c. Any non-residence premises where documents related to Defendants' businesses are stored or maintained;

   d. Any non-residence premises where assets belonging to any Defendant are stored or maintained; and

   e. Any documents located at any of the locations described in this Section; and

3. Provide the Receiver, and his respective representatives, with any necessary means of access to, copying of, and forensic imaging of documents or electronically stored information, including, without limitation, the locations of Receivership Defendants' business premises, keys and combinations to business premises locks, computer access codes of all computers used to conduct Receivership Defendants' business, access to (including but not limited to execution of any documents necessary for

access to and forensic imaging of) any data stored, hosted or otherwise maintained by an electronic data host, and storage area access information.

B. The Receiver is authorized to employ the assistance of law enforcement officers to help effect service, to implement peacefully the provisions of this Order, and to keep the peace. The Receiver must allow the FTC and its representatives, into the premises and facilities described in this Section to inspect, inventory, image, and copy documents or electronically stored information relevant to any matter contained in this Order. No one shall interfere with the Receiver's or the FTC's inspection of the Defendants' premises or documents.

C. The FTC and the Receiver have the right to remove any documents related to Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied. The materials so removed must be returned within five (5) business days of completing said inventory and copying.

D. If any property, records, documents, or computer files relating to the Receivership Defendants' finances or business practices are located in the residence of any Individual Defendant or are otherwise in the custody or control of an Individual Defendant, then such Defendant shall produce them to the Receiver within twenty-four (24) hours of service of this Order.

E. The FTC's and the Receiver's representatives may also photograph or videotape the inside and outside of all premises to which they are permitted

access by this Order, and all documents and other items found on such premises.

F. For documents located at any business premises outside of the United States and for documents located in a personal residence of an Individual Defendant, Defendants shall within seventy-two (72) hours of receiving notice of this Order, produce to the FTC and its representatives, agents, and assistants for inspection, inventory, and/or copying, at Federal Trade Commission, 225 Peachtree Street, Suite 1500, Atlanta, Georgia 30303, Attention: Michael Liggins, the following materials: (1) all customer information, including, but not limited to, names, phone numbers, addresses, email addresses, customer complaints, and payment information for all consumers who have purchased Defendants' computer security or technical support services; (2) contracts; (3) correspondence, including, but not limited to, electronic correspondence and Instant Messenger communications, that refer or relate to the Defendants' computer security or technical support services; (4) an electronic copy of all advertisements for the Defendants' computer security or technical support services; and (5) accounting information, including, but not limited to, profit and loss statements, annual reports, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and 1099 forms. The FTC shall return produced materials pursuant to

this Paragraph within five (5) business days of completing said inventory and copying.

## XII. DEFENDANTS' ACCESS TO PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that the Receiver must allow Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, reasonable access to the premises of the Receivership Defendants. The purpose of this access is to inspect, inventory, and copy any and all documents and other property owned by or in the possession of the Receivership Defendants, provided those documents and property are not removed from the premises. The Receiver has the discretion to determine the time, manner, and reasonable conditions of such access.

## XIII. COOPERATION WITH RECEIVER

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, must fully cooperate with and assist the Receiver. Defendants' cooperation and assistance must include, but not be limited to:

A. Providing any information to the Receiver that he deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order, including but not limited to allowing the Receiver to inspect documents and assets;

B.  Providing any username or password and executing any documents required to access any computer or electronic files in any medium, including but not limited to electronically stored information stored, hosted or otherwise maintained by an electronic data host;

C.  Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver;

D.  Refraining from advising any person who owes money to the Receivership Defendants to pay the debt to anyone other than to the Receiver;

E.  Refraining from transacting any of the business of the Receivership Defendants except under the direction of the Receiver; and

F.  All those actions reasonably necessary to ensure compliance with this Order and the Court's directives to the Receiver.

## XIV.   DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that:

A.  *To the extent not already provided*, immediately upon service of this Order upon them or upon otherwise obtaining this Order, or within a period permitted by the Receiver, Defendants or any other person or entity, including but not limited to financial institutions and electronic data hosts, shall transfer or deliver access to, possession, custody, and control of the following to the Receiver:

   1.  All assets of the Receivership Defendants;

   2.  All documents and electronically stored information of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income

statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title documents and other papers;

3. All assets belonging to members of the public now held by the Receivership Defendants;

4. All keys, computer and other passwords, entry codes, combinations to locks required to open or gain or secure access to any assets or documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

5. Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

B. In the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Fed. R. Civ. P. 4(c)(1)) to seize the asset, document, or other thing and to deliver it to the Receiver.

## XV.    COMPENSATION FOR RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVI.    RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Receiver shall report to this Court no more than forty-five (45) days after the date of this Order, regarding (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Receiver intends to take in the future to (a) prevent any diminution in the value of assets of the Receivership Defendants, (b) pursue receivership assets from third parties, and (c) adjust the liabilities of the Receivership Defendants, if appropriate; (5) whether the business of the Receivership Defendants can be operated lawfully and profitably"; and (6) (4) any other matters that the Receiver believes should be brought to the Court's attention.

## XVII.  RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $25,000 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XVIII.  STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A. Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of its subsidiaries, affiliates, partnerships, assets, documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

    1. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

    2. Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate

any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the assets or documents subject to this Receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants;

B. This Section does not stay:

1. The commencement or continuation of a criminal action or proceeding;

2. The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3. The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

4. The issuance to a Receivership Defendants of a notice of tax deficiency; and

C. Except as otherwise provided in this Order, all persons and entities in need of

documentation from the Receiver shall in all instances first attempt to secure such information by submitting a written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

## XIX.   PRESERVATION OF RECORDS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, writing over, or otherwise disposing of, in any manner, directly or indirectly, any documents or records of any kind that relate to the business practices or business or personal finances of any Corporate Defendant or Individual Defendant, including but not limited to, computerized files and storage media on which information has been saved (including, but not limited to, floppy disks, hard drives, CD-ROMS, zip disks, punch cards, magnetic tape, backup tapes, and computer chips), and any and all equipment needed to read any such material, contracts, accounting data, correspondence, advertisements (including, but not limited to, advertisements placed on the World Wide Web or the Internet), FTP logs, Service Access Logs, USENET Newsgroup postings, World Wide Web pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or

property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of any Corporate Defendant or Individual Defendant.

## XX.    RECORD KEEPING/BUSINESS OPERATIONS

**IT IS FURTHER ORDERED** that Defendants are restrained and enjoined from:

A.  Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money; and

B.  Creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing the FTC with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers and employees; and (4) a detailed description of the business entity's intended activities.

## XXI.    DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, hosting company, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, agent, attorney, and spouse of each Individual Defendant and the Corporate Defendants, and shall, within ten (10) days from the date of entry of this Order, provide the FTC with a sworn statement that the Individual Defendants and the Corporate Defendants have complied with this provision of the Order, which statement shall include the names,

physical addresses, and e-mail addresses of each such person or entity who received a copy of the Order.

## XXII. SERVICE OF ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any assets or documents of any Individual Defendant or Corporate Defendants, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XXIII. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning each Individual Defendant to the FTC.

## XXIV. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes. No security is required of any agency of the United States for the issuance of a restraining order. Fed. R. Civ. P. 65(c).

**DONE** and **ORDERED** in Fort Myers, Florida this 4th day of June 2017.

*Sheri Polster Chappell*

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies: All Parties of Record