UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERAL TRADE COMMISSION and
STATE OF FLORIDA,

    Plaintiffs,

v.                                       Case No: 2:17-cv-228-FtM-99MRM

VYLAH TEC LLC, EXPRESS TECH
HELP LLC, TECH CREW SUPPORT LLC,
ANGELO J. CUPO, ROBERT CUPO and
DENNIS CUPO,

    Defendants.
_____/

# ORDER

Pending before the Court is Plaintiffs' Motion to Strike Defendants' Jury Trial Demand filed on September 27, 2017. (Doc. 112). Defendants failed to file a timely response. On February 1, 2018, Defendants filed an Opposed Motion for Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand. (Doc. 166). Defendants attached their proposed untimely response to Plaintiffs' Motion (Doc. 166-1). Plaintiffs timely filed a response in opposition. (Doc. 177). These matters are ripe for review. For the reasons explained below, Defendants' Opposed Motion for Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand (Doc. 166) is **DENIED** and Plaintiffs' Motion to Strike Defendants' Jury Trial Demand (Doc. 112) is **GRANTED**.

## I.    Background

Plaintiffs brought this action alleging that Defendants engaged in a deceptive technical support scam operating nationwide. (Doc. 2). On June 6, 2017, Defendants filed their Answer

and Affirmative Defendants. (Doc. 63). In their Answer, Defendants demanded a "trial by jury on all claims so triable." (*Id.* at 6).

Later, Defendants reiterated their jury trial demand as part of the parties' Joint Case Management Report. (Doc. 74 at 3). The Case Management Report, however, indicated that the issue was contested. (*See id.*). Defendants subsequently obtained new counsel. (*See* Doc. 87). On August 8, 2017, the Court conducted a Preliminary Pretrial Conference, at which the issue of Defendants' jury demand was discussed. (Doc. 93). Ultimately, the Court instructed Defendants' new counsel to confer with Defendants to confirm whether they were maintaining their jury trial demand. (*Id.*). The Court ordered Defendants to file a notice reflecting whether or not they were maintaining their jury demand no later than August 31, 2017. (*Id.*).

On August 31, 2017, Defendants filed a Demand for Jury Trial (Doc. 102). On September 27, 2017, Plaintiffs filed their Motion to Strike Defendants' Jury Trial Demand (Doc. 112). By operation of M.D. Fla. R. 3.01(b), Defendants' deadline to file a response to Plaintiffs' Motion was October 11, 2017. Defendants did not file a response in opposition, nor did they seek an extension of time to respond.

Subsequently, Defendants again obtained new counsel. (*See* Doc. 146). Defendants' current counsel filed an Unopposed Motion for Admission Pro Hac Vice, and Written Designation and Consent to Act (Doc. 146) on December 19, 2017. On January 3, 2018, the Court granted the Unopposed Motion for Substitution of Counsel (Doc. 153), allowing Defendants' previous attorney, Joe M. Grant, to withdraw as counsel. (Doc. 155).

Almost one month later, Defendants' current counsel realized that Defendants had not filed a response in opposition to Plaintiffs' Motion to Strike Defendants' Jury Trial Demand (Doc. 112) and that the Motion had not yet been addressed by the Court. (Doc. 166 at 1). As a

result, on February 1, 2018, Defendants filed their Opposed Motion for Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand. (*See id.*). Defendants attached their proposed response to Plaintiffs' Motion to Strike (Doc. 166-1) to their Motion. Plaintiffs timely filed their response in opposition (Doc. 177) to Defendants' Motion on February 15, 2018.

**II.     Discussion**

In reviewing the issues raised by the parties' Motions, the Court first addresses Defendants' Opposed Motion Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand (Doc. 166). After this evaluation, the Court then addresses the issues raised by Plaintiffs' Motion to Strike Jury Trial Demand (Doc. 112).

**A.     Defendants' Opposed Motion for Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand (Doc. 166)**

In evaluating Defendants' Opposed Motion Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand (Doc. 166), the Court must examine whether to accept and consider Defendants' proposed response (Doc. 166-1) to Plaintiffs' Motion to Strike ( Doc. 112) even though Defendants failed to file their response timely.

**1.     Legal Standards**

Fed. R. Civ. P. 6(b) governs this issue. Specifically, Rule 6(b)(1) provides that:

When an act may or must be done within a specified time, the court may, for good cause, extend the time:

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

In this instance, Fed. R. Civ. P. 6(b)(1)(A) is inapplicable because Defendants did not seek an extension of time "before the original time or its extension expire[d]." Thus, the Court

examines whether Defendants' untimely response should be permitted under Fed. R. Civ. P. 6(b)(1)(B).

Under Rule 6(b)(1)(B), a showing of "excusable neglect" is required for an extension of a passed deadline. *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1375 (M.D. Fla. 2009). "Excusable neglect is 'at bottom an equitable [principle], taking account of all relevant circumstances surrounding the party's omission.'" *Inglis v. Wells Fargo Bank N.A.*, No. 2:14-cv-677-FTM-29CM, 2017 WL 637485, at *2 (M.D. Fla. Feb. 16, 2017) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993)). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392.

In determining whether excusable neglect exists, the Court utilizes a four-factor balancing test and evaluates: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Delgado v. Magical Cruise Co., Ltd.*, No. 6:15-cv-2139-ORL-41TBS, 2017 WL 3131443, at *2 (M.D. Fla. July 24, 2017) (citing *Pioneer*, 507 U.S. at 395). In reviewing these factors, the Court accords primary importance to the absence of prejudice to the non-moving party and to the interest of efficient judicial administration. *See Walter v. Blue Cross & Blue Shield United of Wisconsin*, 181 F.3d 1198, 1201 (11th Cir. 1999). The Court evaluates these factors in turn below.

### 2. Analysis

#### *(i) Danger of Prejudice to the Non-Movant*

The first factor is the danger of prejudice to the non-moving party. *Delgado*, 2017 WL 3131443, at *2.

Defendants argue that "no prejudice will result to any party from this delay because the case is currently docketed as Jury Demand, and thus no party has changed its position or litigation strategy." (Doc. 166 at 1-2).

In response, Plaintiffs argue that they would be prejudiced if Defendants "are allowed to ignore the rules without a valid explanation." (Doc. 177 at 4). Plaintiffs state that Defendants' Motion "fails to describe any facts that would serve as a basis for showing there is good cause to extend the time for their response." (*Id.*). Plaintiffs argue that "[t]he defendants should be expected to abide by the federal rules if they expect Plaintiffs to do so" and "[t]o allow them to avoid compliance without any justification is prejudicial to others who seek to comply." (*Id.* at 4-5).

The Court finds Plaintiffs' arguments compelling. In evaluating this issue, the Court notes that it has the authority to apply deadlines found in the Local Rules, and the authority to sanction noncompliance. *See Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 16 n.38 (11th Cir. 2003). Additionally, Defendants have failed to explain their failure to respond timely. Under the circumstances, allowing an untimely response here would serve only to incentivize future noncompliance with court deadlines. The Court cannot abide such a result.

Additionally, Plaintiffs have suffered some prejudice – albeit minor – as a result of Defendants' unexplained delay. The Court finds, therefore, that this factor weighs in favor of Plaintiffs, but only slightly.

### *(ii)    Length of Delay and Impact on Judicial Proceedings*

The second factor is length of the delay and impact on judicial proceedings. *Delgado*, 2017 WL 3131443, at *2.

The length of the delay from the filing of Plaintiff's Motion to Strike (Doc. 112) on September 27, 2017 to Defendants' Motion for Leave (Doc. 166) on February 1, 2018 is over four months. The Court finds the length of this delay significant, even if counted from the date Defendants' response would have been due pursuant to M.D. Fla. R. 3.01(b).

Nevertheless, Defendants' delay ultimately did not impact any other Court-imposed deadlines. The Court finds, therefore, that the impact of Defendants' delay on Court proceedings is minimal. This factor, therefore, weighs in favor of Defendants.

### *(iii)    Reason for the Delay*

The third factor is the reason for the delay, including whether it was within the reasonable control of the movant. *Delgado*, 2017 WL 3131443, at *2.

In their Motion, Defendants note that their new counsel were admitted to practice before this Court on December 19, 2017. (Doc. 166 at 1). Defendants state that, at that time, "six depositions had been noticed (ECF 140, 142, 143, 144, 145, and 147), an additional deposition was noticed two days later (ECF 151), and an eighth deposition was schedule via subpoena (no notice of filing was made)." (*Id.*). Defendants further note that, on January 3, 2018, the Court granted their previous counsel's motion to withdraw. (*Id.* (citing Doc. 155)). Defendants state that, at that time, transfer of the case file was still in process to their new counsel. (*Id.*).

In response, Plaintiffs point out that Defendants are "silent on any details to explain why their counsel did not file a response last October." (Doc. 177 at 5). Indeed, Plaintiffs note that Defendants' deadline to respond "passed long before the defendants' current counsel made their

6

request to respond out of time." (*Id.*). Plaintiffs further note that Defendants provided "no explanation that the deadline was inadvertently missed or that there was an intervening circumstance." (*Id.*). Plaintiffs argue that "[h]ad a valid explanation existed, it is presumed the defendants would have brought that to the Court's attention in their motion or provided an affidavit from previous counsel." (*Id.*). In this instance, Plaintiffs argue that "[s]uch details remain a mystery . . . [b]ecause the defendants failed to provide any details that would provide a valid reason, it simply appears the defendants chose not to respond, but have belatedly changed their minds on how they want to proceed." (*Id.*). As a result, Plaintiffs argue that Defendants' justification for their untimely response "appears to be they have new counsel who was busy with deposition notices and just noticed the filing, however, this excuse is completely irrelevant to why the deadline was missed in the first place or whether there was excusable neglect." (*Id.*).

In reviewing this issue, the Court notes that it may reject requests to accept untimely filings when the movant fails to provide sufficient factual information to establish excusable neglect. *See Inglis*, 2017 WL 637485, at *2 (denying a motion to accept an untimely filing in part because the motion did not provide sufficient factual information to establish excusable neglect); *see also Foudy v. Saint Lucie Cty. Sheriff's Office*, 677 F. App'x 657, 661 (11th Cir. 2017) (holding that the district court did not abuse its discretion in failing to find excusable neglect under Fed. R. Civ. P. 60(b) when the movant offered no explanation for failing to seek to file a motion timely). Here, Defendants failed to state *any* explicit reason why they missed their original deadline to respond or why it took so long to realize that failure to act.

As noted above, by operation of M.D. Fla. R. 3.01(b), Defendants' deadline to file a response to Plaintiffs' Motion was October 11, 2017. Defendants did not file a response in

7

opposition, nor did they seek an extension of time to respond at that time. In fact, Defendants still have not given *any* explanation for their failure to respond by October 11, 2017.

To the extent Defendants could argue that their previous counsel is to blame for this failure, the Supreme Court and the Eleventh Circuit have consistently stated that clients must be held accountable for the acts and omissions of their attorneys. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004) (citing *Pioneer*, 507 U.S. at 396-97). Thus, even if Defendants' previous counsel is to blame, Defendants must still be held accountable for this failure. *See id.*

Further, even if the Court were to excuse Defendants' failure to respond by October 11, 2017, Defendants and their current counsel still have not explained why Defendants failed to seek leave to file an untimely response after this time. For instance, as noted above, Defendants' current counsel were permitted to appear *pro hac vice* on December 19, 2017. (*See* Doc. 148). Yet Defendants' current counsel did not seek to file an untimely response in opposition to Plaintiffs' Motion to Strike until February 1, 2018.

This delay, amounting to more than six weeks, is still unexplained. Indeed, while Defendants note in their Motion that (1) their current counsel was admitted to practice before this Court on December 19, 2017, (2) multiple depositions were scheduled around that time frame, and (3) when the Court granted their previous counsel's motion to withdraw on January 3, 2018, the transfer of the case file was still in process to current counsel, Defendants do not expressly state that *any* of these reasons caused the delay from December 19, 2017 to February 1, 2018. (*See* Doc. 166 at 1). Instead, Defendants merely list these facts, presumably, to support an inference that their new counsel was not responsible for any delay. These facts, however, do not explain the over six-week delay in Defendants' response.

In sum, Defendants offer no explanation for why they failed to file a timely response to Plaintiffs' Motion to Strike. Had they provided an explanation, the Court could have considered it. On this point, the Court notes that the Eleventh Circuit has found that explanations such as "negligence" and "innocent oversight by counsel" are sufficient to establish excusable neglect. *See Walter*, 181 F.3d at 1202. Defendants, however, provided no excuse for their delay. Moreover, without an explanation to the contrary by Defendants, the Court concludes that the delay was within the reasonable control of the movant. *See Delgado*, 2017 WL 3131443, at *2. The Court, therefore, finds that this factor weighs heavily against the Defendants.

*(iv)    Whether the Movant Acted in Good Faith*

The final factor is whether the movant acted in good faith. *Delgado*, 2017 WL 3131443, at *2. Here, while the Court has no factual basis to conclude that Defendants acted in good faith, it also has no basis to conclude that Defendants acted in bad faith. As a result, the Court finds that this factor weighs in favor of Defendants. *See Walter*, 181 F.3d at 1202 (implicitly weighing this factor in favor of the movant when he did not act in bad faith).

### 3.    Conclusion

Considering all of the factors together, the Court accords primary importance to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration in determining whether to accept an untimely filing. *See Walter*, 181 F.3d at 1202. Here, there is only a slight prejudice to Plaintiffs and very little impact on judicial administration. Even so, the Court nevertheless finds that the third factor – the reason for the delay, including whether it was within the reasonable control of the movant – overwhelms the remaining factors.

9

Here, Defendants failed to provide any explanation for their failure to file a timely response to Plaintiffs' Motion to Strike. As a result, the Court finds no factual basis on which to conclude excusable neglect is present. *See Inglis*, 2017 WL 637485, at *2. Accordingly, the Court finds that Defendants' Opposed Motion for Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand (Doc. 166) must be denied. *See* Fed. R. Civ. P. 6(b)(1)(B).

### B. Plaintiffs' Motion to Strike Defendants' Jury Trial Demand (Doc. 112)

Because Defendants' Opposed Motion for Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand (Doc. 166) is denied, the Court declines to consider Defendants' proposed untimely response in opposition (Doc. 166-1) to Plaintiffs' Motion to Strike Defendants' Jury Trial Demand (Doc. 112). Indeed, the Court deems Plaintiffs' Motion to Strike Defendants' Jury Trial Demand (Doc. 112) as being unopposed.

In their Motion, Plaintiffs seek to strike Defendants' jury demand for all claims. (Doc. 112 at 4). In this action, Plaintiff Federal Trade Commission ("FTC") asserts two claims under the Federal Trade Commission Act ("FTC Act"). (Doc. 2 at 12-13). For its part, Plaintiff State of Florida asserts two counts under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). (*Id.* at 13-14). Plaintiffs argue that "[t]here is no constitutional or statutory basis that entitles the defendants to a jury trial in an equitable matter, such as the instant case" as to any of the claims asserted by Plaintiffs. (*Id.* at 2).

In evaluating this request, the Court notes that, pursuant to Fed. R. Civ. P. 38(a), "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Pursuant to Fed. R. Civ. P. 39:

> When a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless:

> (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or
>
> (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Based on these Rules, the Court must examine whether Defendants have either a statutory or constitutional right to a jury trial as to the claims asserted by Plaintiffs. The Court addresses the claims by each Plaintiff seriatim, beginning with the claims asserted by the FTC.

### 1. Claims Asserted by Plaintiff FTC

In evaluating whether Defendants have a right to a jury trial on the claims asserted by the FTC, the Court first examines whether there is a statutory basis for the demand. There is not.

Specifically, the laws under which the FTC brings this case do not provide a jury right. *See* 15 U.S.C. § 45(a). Indeed, the FTC is a federal agency tasked with enforcing various laws, including § 5(a) of the FTC Act, which prohibits unfair or deceptive acts or practices in or affecting commerce, 15 U.S.C. § 45(a). *FTC v. Lanier Law, LLC*, No. 3:14-cv-786-J-34PDB, 2015 WL 9598794, at *2 (M.D. Fla. Dec. 8, 2015), *report and recommendation adopted*, No. 3:14-cv-786-J-34PDB, 2016 WL 25938 (M.D. Fla. Jan. 4, 2016). Under § 13(b) of the FTC Act, the FTC may file suit in federal district court to enjoin practices that violate the laws it enforces. *Id.* (citing 15 U.S.C. § 53(b)). As noted by the Eleventh Circuit, the injunctive remedies under § 13(b) are both equitable in nature and extensive in scope, and allow for the "full range" of equitable remedies ancillary to a court's injunctive powers. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996). The statute does not, however, provide an entitlement to a jury trial. Accordingly, the Court finds that the FTC Act does not provide Defendants a right to a jury trial on the claims asserted by the FTC.

Without a statutory basis, the Court addresses whether Defendants have a constitutional jury right as to the claims asserted by the FTC. Defendants do not.

In coming to this conclusion, the Court notes that the Seventh Amendment to the United States Constitution provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved." U.S. Const. amend. VII. "Suits at common law" refers to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (internal citation and emphasis omitted). To determine whether a constitutional jury right exists, the Court must (1) "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity" and (2) "examine the remedy sought and determine whether it is legal or equitable in nature." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990) (citation omitted).

As to the first factor, this Court has previously noted that "an action is analogous to one that would have been brought in a court of equity if by a government agency in the public interest rather than by a private party for damages and if seeking discretionary rather than mandatory relief." *Lanier Law*, 2015 WL 9598794, at *3 (citing *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978); *FTC v. Kitco of Nev., Inc.*, 612 F. Supp. 1280, 1281 n.1 (D. Minn. 1985)). Here, the case is indeed brought by a government agency – the FTC – in the public interest rather than by a private party for damages. (*See* Doc. 2). Moreover, the relief is discretionary rather than mandatory. *See* 15 U.S.C. § 53(b). As a result, this case is analogous

to one that would have been brought in a court of equity. *See Lanier Law*, 2015 WL 9598794, at *3.

As to the second factor – the remedies sought – the FTC seeks injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. (Doc. 2 at 16). Each of these remedies is equitable in nature. *See id.*

Indeed, injunctive relief is equitable. *See FTC v. Leshin*, 719 F.3d 1227, 1232 (11th Cir. 2013). Similarly, rescission or reformation of contracts is equitable. *See Lanier Law*, 2015 WL 9598794, at *3 (citing *Ross v. Bank South, N.A.*, 885 F.2d 723, 742 (11th Cir. 1989) (Tjoflat, J., concurring)). A refund order is also equitable. *See Ecee, Inc. v. FERC*, 645 F.2d 339, 353 (5th Cir. 1981).[1] Further, disgorgement is equitable. *See FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1326 (11th Cir. 2013). Finally, while restitution may be legal or equitable, in an FTC action, it "is an equitable remedy designed to cure unjust enrichment of the defendant. Specifically, restitution and disgorgement deprive the defendant of his ill-gotten gains; these equitable remedies do not take into consideration the plaintiff's losses." *FTC v. Bishop*, 425 F. App'x 796, 797-98 (11th Cir. 2011) (internal citation omitted). Additionally, as this Court has previously noted, "[b]ecause those remedies are based on a statutory violation, the FTC does not have to rely on common law theories of unjust enrichment requiring proof the defendant holds property traceable to the proceeds of his wrongdoing." *Lanier Law*, 2015 WL 9598794, at *3 (citing *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 371-72 (2d Cir. 2011)).

As a final matter on this point, the Court notes that the FTC is not seeking monetary damages or civil penalties. (Doc. 2 at 15-16). Had the FTC either sought monetary damages or

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

civil penalties, then the entitlement to a jury trial would be different. *See United States v. Dish Network, LLC*, 754 F. Supp. 2d 1002, 1003 (C.D. Ill. 2010) (upholding the Government's demand for a jury trial because it was an action for monetary penalties).

Under these principles, there is no constitutional jury right in this case. This conclusion is consistent with prior decisions of this Court, *see Lanier Law*, 2015 WL 9598794, at *3, and decisions from other courts addressing the issue of a constitutional jury right in an FTC action seeking relief under § 13(b). *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 67 (2d Cir. 2006); *FTC v. ELH Consulting, LLC*, No. CV 12-02246-PHX-FJM, 2013 WL 593885, at *1 (D. Ariz. Feb. 7, 2013); *FTC v. First Univ. Lending*, No. 09-82322-CIV, 2011 WL 688744, at *3 (S.D. Fla. Feb. 18, 2011); *FTC v. Think All Pub., LLC*, 564 F. Supp. 2d 663, 665 (E.D. Tex. 2008); *FTC v. Seismic Entm't Prods., Inc.*, 441 F. Supp. 2d 349, 353 (D.N.H. 2006); *Kitco*, 612 F. Supp. at 1281.

In sum, Defendants do not have a statutory or constitutional right to a jury trial for the claims asserted by the FTC. The Court, therefore, finds that Plaintiff's Motion to Strike is due to be granted on this ground.

### 2. Claims Asserted by Plaintiff State of Florida

Finally, the Court addresses whether Defendants have a statutory or constitutional right to the claims asserted by the State of Florida. Defendants do not.

As to a statutory right, the Court has not identified any statutory right under FDUTPA. *See* Fla. Stat. § 501.201, *et seq.* Moreover, the Court has not identified any federal statutory right. *See* Fed. R. Civ. P. 38. The Court finds, therefore, finds that Defendants are not entitled to a jury trial on this basis.

As to a constitutional jury right, the Court evaluates the same two factors as above. In evaluating the first factor, the Court notes that, as with the FTC, the case is indeed brought by a government agency – the State of Florida – in the public interest rather than by a private party for damages. (*See* Doc. 2). Moreover, the relief is discretionary rather than mandatory. *See* Fla. Stat. § 501.201, *et seq.* As a result, this case is analogous to one that would have been brought in a court of equity. *See Lanier Law*, 2015 WL 9598794, at *3. As to the second factor, the State of Florida is only seeking equitable relief. Indeed, for the reasons explained above, injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies are all equitable in nature. *See id.* Under these principles, there is no constitutional jury right in this case.

In sum, Defendants do not have a statutory or constitutional right to a jury trial for the claims asserted by the State of Florida. The Court, therefore, finds that Plaintiff's Motion to Strike is due to be granted on this ground as well.

### 3. Conclusion

Because Defendants do not have a statutory or constitutional right to a jury trial in this action, the Court finds that Plaintiff's Motion to Strike (Doc. 112) is due to be granted. As a result, the Court hereby strikes Defendants' jury demand and will re-designate this action for a non-jury trial.

## CONCLUSION

For the reasons discussed above, the Court hereby **ORDERS** that:

1) Defendants' Opposed Motion for Leave to File Opposition to Plaintiffs' Motion to Strike Jury Trial Demand (Doc. 166) is **DENIED**.

15

2) Plaintiffs' Motion to Strike Defendants' Jury Trial Demand (Doc. 112) is **GRANTED**.

3) Defendants' jury demand is **STRICKEN**.

4) The Clerk of Court is directed to issue an amended Case Management and Scheduling Order with the same case-management deadlines, but reflecting that the matter is now set for a non-jury trial.[2]

**DONE AND ORDERED** in Fort Myers, Florida on June 13, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[2] The amended Case Management and Scheduling Order will not alter the Court's February 27, 2018 Order (Doc. 184) holding all remaining case management deadlines – including the trial term – in abeyance pending the Court's resolution of the pending discovery motions (Docs. 178-179). (Doc. 184 at 2).