UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERAL TRADE COMMISSION and
STATE OF FLORIDA,

     Plaintiffs,

v.                              Case No:  2:17-cv-228-FtM-99MRM

VYLAH TEC LLC, EXPRESS TECH
HELP LLC, TECH CREW SUPPORT LLC,
ANGELO J. CUPO, ROBERT CUPO and
DENNIS CUPO,

     Defendants.

_____/

## OMNIBUS DISCOVERY ORDER

Pending before the Court are Defendants' Motion to Compel Amended Interrogatory

Responses from Plaintiffs (Doc. 178); Plaintiff Federal Trade Commission's ("FTC") Motion for

a Protective Order to Prevent Certain Topics Noticed by Defendants for a 30(b)(6) Deposition of

the Federal Trade Commission and Their Request That the Agency Produce Documents at the

Time of the Deposition (Doc. 179); and Plaintiff State of Florida's Motion for a Protective Order

to Limit the Scope of Topics Noticed by Defendants for a 30(b)(6) Deposition and the Request

for Documents at the Time of the Deposition (Doc. 186). The parties timely filed responses in

opposition. These matters are ripe for review.

## I.     Legal Standards

The three motions *sub judice* concern whether certain discovery should be permitted.

Fed R. Civ. P. 26(b)(1) governs the scope of permissible discovery. The rule states that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26 (b)(1).

As stated by the Rule, the scope of permissible, relevant discovery is determined by the parties' claims and defenses. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 n.37 (11th Cir. 1997). "Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence." *Gonzalez v. ETourandTravel, Inc.*, No. 6:13-cv-827-Orl-36TBS, 2014 WL 1250034, at *2 (M.D. Fla. Mar. 26, 2014) (citing *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013)).

In addition to the requirements of Rule 26(b)(1), Rule 26(b)(2)(C) requires the Court to limit the frequency or extent of discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26 (b)(2)(C).

If a party fails to make a disclosure or fails to provide information in response to a discovery request, a party may file a motion to compel discovery pursuant to Fed. R. Civ. P. 37(a). Rulings on motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. *See NetJets Aviation, Inc. v. Peter Sleiman Dev. Grp., LLC*, No. 3:10-cv-483-J-32MCR, 2011 WL 6780879, at *2 (M.D. Fla. Dec. 27, 2011) (citing *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984)). The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant. *Bright v. Frix*, No. 8:12-cv-1163-T-35MAP, 2016 WL 1011441, at *1 (M.D. Fla. Jan. 22, 2016).

Conversely, any "party or any person from whom discovery is sought may move for a protective order," and the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005) (citing *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). The decision to enter a protective order, however, is within the Court's discretion and does not depend on a legal privilege. *Id.* at 429 (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985)).

Additionally, with regard to depositions of governmental agencies, Fed. R. Civ. P. 30(b)(6) states "[i]n its notice . . ., a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(d)(3)(B) allows for depositions to be limited under Fed. R. Civ. P. 26(c).

Applying the standards and principles discussed above, the Court addresses the merits of the parties' outstanding discovery disputes below. In doing so, the Court first addresses Defendants' Motion to Compel (Doc. 178). Next, the Court discusses Plaintiffs' Motions for a Protective Order (Docs. 179, 186) together because the Motions are virtually identical.

## II.    Defendants' Motion to Compel (Doc. 178)

Defendants filed a Motion to Compel (Doc. 178) seeking amended interrogatory responses from Plaintiffs to Interrogatory Nos. 6, 7, 12, 14, and 15 of its First Set of Interrogatories (Doc. 178-1). The Court addresses these interrogatories in turn below. Before

doing so, however, the Court addresses two general issues that are not specifically directed at the five interrogatories.

### A. Miscellaneous Issues

First, Plaintiffs contend that Defendants' counsel failed to meet and confer regarding these interrogatories prior to filing their Motion. (Doc. 189 at 2). The Court finds this allegation troubling. In general, the Court requires parties to comply strictly with M.D. Fla. R. 3.01(g) before filing any motion with the Court. Even so, it is clear that the parties continue to disagree regarding the specific issues raised here. The Court declines to address Defendants' noncompliance at this time. Going forward, however, the Court admonishes the parties that failure to comply fully with Local Rule 3.01(g) may result in the summary denial of the offending motion and/or the imposition of sanctions.

Second, Defendants object to Plaintiffs' list of "General Objections" from their responses to Defendants' Interrogatories. (Doc. 178 at 3-4). Defendants argue that Plaintiffs had two options in responding to their interrogatories, answer or object. (*Id.* at 4 (citations omitted)). To the extent that Plaintiffs have not done so, Defendants argue that Plaintiffs' General Objections should be ignored. (*Id.* at 3-4). The Court need not resolve this issue at this time because Plaintiffs asserted specific objections to the interrogatories at issue here. The Court addresses Plaintiffs' specific objections below.

### B. Interrogatory No. 6

Defendants' Interrogatory No. 6 states: "[i]dentify any customers of the Defendants you have communicated with in connection with the facts alleged in your Complaint and describe each communication." (Doc. 178-1 at 8).

Plaintiffs' response states:

Plaintiffs object to this request to the extent that it is overbroad and unduly burdensome because it imposes an obligation greater than those set forth in the Federal Rules of Civil Procedure. Plaintiffs further object to the extent that this request calls for documents protected from disclosure by the deliberative process privilege, attorney work product doctrine, or any other applicable privilege.

Notwithstanding Plaintiffs' objection, Plaintiffs direct Defendants to Volume I, Plaintiffs' Exhibits 16-25 and 28-31, which are in the possession of Defendants. Additionally, identifying information about customers was provided to Defendants in Plaintiffs' Initial Disclosures, which were served August 4, 2017.

(Doc. 178-2 at 10).

Here, Defendants argue that, because Plaintiffs designated prior Exhibits in which responsive information was provided, Plaintiffs answered the interrogatory and, therefore, waived any objections. (Doc 178 at 5-6). Defendants further argue that Interrogatory No. 6 "does not impose any overbroad or unduly burdensome obligation greater than those set forth in the federal rules." (*Id.* at 6). Finally, Defendants argue that basic facts are discoverable. (*Id.*). As a result, Defendants argue that they are entitled to this factual information notwithstanding any privilege objections Plaintiffs may assert. (*See id.*).

For their part, Plaintiffs first state that they have supplemented their discovery responses by providing letter and email communications. (Doc. 189 at 5). Additionally, Plaintiffs state that they have updated their discovery responses by providing a list of additional employees who were contacted. (*Id.*).

Plaintiffs further argue that "[a]lthough Defendants have access to the identities of the consumers and employees who have been contacted, it appears they are also seeking a more substantive description of the communications." (*Id.*). On this point, "Plaintiffs object to producing their work product." (*Id.*). Specifically, Plaintiffs object to producing their interview notes from conversations with these individuals because "[t]he information sought would involve disclosing the thought process of the attorney conducting the interview and what information

was important in developing Plaintiffs' case." (*Id.*). Plaintiffs argue that "[t]his is core work product" and that "Defendants are unable to establish the requisite need for Plaintiffs' interview notes because they are capable of conducting their own interviews with the consumers and employees to develop the facts of the case." (*Id.* at 5-6). Plaintiffs argue that "[t]he initial disclosures and the documents productions, including Defendants' business records, provide the necessary information to contact these individuals on their own." (*Id.* at 6).

As an initial matter, the Court notes that Plaintiffs expressly state that they have supplemented their responses. (*Id.* at 5). As a result, it is possible that Plaintiffs' supplementations have resolved or narrowed the present discovery dispute as to Interrogatory No. 6. Nevertheless, no party has filed a notice or other filing indicating that this issue has been fully resolved. The Court, therefore, addresses the specific issues raised by the parties below.

First, although Defendants argue that that Plaintiffs waived any objections to their discovery responses by designating certain materials in response to the interrogatory, the Court declines to find that waiver occurred here. On this point, Defendants are correct that that "[i]f an objection to a discovery request is raised, and then the question is answered 'subject to' or 'without waiving' the objection, this court is reluctant to sustain the objection." *Sewell v. D'Alessandro & Woodyard, Inc.*, No. 2:07-CV-343-FTM-29, 2011 WL 1232347, at *1 (M.D. Fla. Mar. 30, 2011) (citing *Mann v. Island Resorts Dev., Inc.*, No. 3:08CV297/RS/EMT, 2009 WL 6409113, at *2-3 (N.D. Fla. Feb. 27, 2009)). Even so, what Plaintiffs did in responding to Defendants' request appears to be consistent with a scenario outlined in the Court's Handbook on Civil Discovery Practice.

The Civil Discovery Handbook contains a specific section for answering objectionable interrogatories. *See* Middle District Discovery (2015) at IV.C.6, p. at 18. The Handbook states:

> If any interrogatory is objectionable because of overbreadth, the responding party, although objecting, must answer the interrogatory to the extent that the interrogatory is not overbroad. In other words, an objection for overbreadth does not relieve the duty to respond to an extent that is not overbroad, while a party awaits a judicial determination regarding the objection.

*Id.* Here, Plaintiffs followed this procedure by objecting on overbreadth but also providing a response to Defendants' discovery request. (Doc. 178-2 at 10). Because the Court finds the Handbook highly persuasive on civil discovery issues, the Court declines to find a waiver by Plaintiffs on this ground.

Notwithstanding this finding, however, the Court notes that Fed. R. Civ. P. 33(b)(3) provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Here, the Court finds that Plaintiffs failed to comply fully with Rule 33(b)(3) because Plaintiffs only directed Defendants to certain designated materials as being responsive to the Interrogatory. (*See* Doc. 178-2 at 10). Plaintiffs did not separately and fully state an answer to this question.

Furthermore, this finding is not undermined by Rule 33(d). The Rule provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

Plaintiffs made no argument that their answer was satisfactory under Rule 33(d). Moreover, Plaintiffs are in a far better position to "[i]dentify any customers of the Defendants

you have communicated with in connection with the facts alleged in your Complaint and describe each communication" than Defendants. (*See* Doc. 178-1 at 8). The Court finds, therefore, that a separate and complete answer by Plaintiffs is warranted here.

To be clear, the Court is not directing Plaintiffs to produce documents that are privileged or work product. (*See* Doc. 189 at 5). Instead, the Court is requiring Plaintiffs to comply with Rule 33(b)(3) by separately and fully answering the Interrogatory with responsive, non-privileged information to which no objection has been raised. Moreover, to the extent that it can be argued that merely providing a description of their communications with Defendants' customers threatens to invade the work product protection, Plaintiffs have not expressly made such an argument. The Court, therefore, declines to address it here.

Accordingly, the Court grants Defendants' Motion as to Interrogatory No. 6. Plaintiffs must serve an amended response to Interrogatory No. 6 separately and fully in writing under oath within fourteen (14) days from the date of this Order. *See* Fed. R. Civ. P. 33(b)(3).

### C.      Interrogatory No. 7

Defendants' Interrogatory No. 7 states: "[i]dentify any employees, former or current, of the Defendants you have communicated with in connection with the facts alleged in your Complaint and describe each communication." (Doc. 178-1 at 8).

Plaintiffs' response states:

> In connection with the facts alleged in Plaintiffs' complaint, Plaintiffs have communicated with Matt Luongo in connection with his employment with Vylah Tec LLC, as described in his declaration identified as PX 15. Identifying information about Mr. Luongo was provided to Defendants in Plaintiffs' Initial Disclosures, which were served August 4, 2017.

(Doc. 178-2 at 10).

Defendants argue that "[s]worn deposition testimony shows that the above answer is woefully incomplete." (Doc. 178 at 7). In support, Defendants cite deposition testimony showing that two former employees other than Mr. Luongo were contacted by Plaintiffs. (*Id.*). As a result, Defendants argue that Plaintiffs should be required to amend their response. (*Id.*).

For their part, Plaintiffs assert the same arguments for Interrogatory No. 7 as Interrogatory No. 6. (Doc. 189 at 5-6).

As with Interrogatory No. 6, Plaintiffs expressly state that they have supplemented their responses. As a result, it is possible that Plaintiffs' supplementations have resolved or narrowed the present discovery dispute as to Interrogatory No. 7. Nevertheless, based on the evidence cited by Defendants, it appears that Plaintiffs' answers are potentially incomplete. As a result, the Court will require Plaintiffs to serve an amended response to Interrogatory No. 7 separately and fully in writing under oath within fourteen (14) days from the date of this Order. *See* Fed. R. Civ. P. 33(b)(3).

## D. Interrogatory No. 12

Defendants' Interrogatory No. 12 states: "[d]escribe how you calculated the millions of dollars in consumer injury referenced in paragraph 38 of the Complaint." (Doc. 178-1 at 11).

Plaintiffs' response states that they "calculated the consumer injury amount as described in the declaration of Emil S. George. *See* Volume I, PX 03." (Doc. 178-2 at 14).

Defendants argue that, in responding to Interrogatory No. 12, Plaintiffs only designated a Declaration of an FTC forensic accountant, who "summarizes his findings in a table which takes total receipts from credit card processors, subtracts chargebacks, and identifies gross receipts." (Doc. 178 at 8). Defendants argue that "[t]his document fails to identify a single, specific consumer or instance of deception or consumer harm." (*Id.*). As a result, Defendants argue that

Plaintiffs "should be compelled to identify the individual instance of each consumer harmed, rather than just conducting basic math—that assumes anyone buying needed software was harmed by the purchase—to get the result of gross receipts." (*Id.*).

In response, Plaintiffs argue that they have provided a detailed explanation of their calculations. (Doc. 189 at 7-8). Additionally, Plaintiffs argue need not identify every instance of consumer harm because Plaintiffs do not need to prove reliance by each consumer misled by Defendants. (*See id.* at 8 (citing *FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1275 (S.D. Fla. 1999)).

After careful review of the parties' arguments, the Court denies Defendants' Motion as to Interrogatory No. 12. Here, Plaintiffs provided a detailed calculation of the damages through a declaration of their forensic accountant. (Doc. 178-2 at 14). Defendants have not objected to sufficiency of this report as to the calculations made therein. (*See* Doc. 178 at 8). Additionally, although Defendants argue that they should be provided a detailed description of every instance of harm that Plaintiffs allege, Interrogatory No. 12 does not ask for a detailed description of every instance of harm that Plaintiffs allege. (*See id.*). Instead, the Interrogatory only asks for a calculation of damages. It appears that Plaintiffs have provided information showing how they calculate damages here.

### E. Interrogatory No. 14

Defendants' Interrogatory No. 14 states:

Identify all instances where the Defendants successfully sold a product or a service by taking actions alleged in:

a. Count I;

b. Count II;

c. Count III; and

d. Count IV.

(Doc. 178-1 at 12).

Plaintiffs' response states:

Plaintiffs object to this interrogatory to the extent that it is an impermissible contention interrogatory that is not designed to target claims, defenses or contentions that the propounding attorney reasonably suspects may be the proper subjects of early dismissal or resolution or, alternatively, to identify and to narrow the scope of claims, defenses and contentions made where the scope is unclear. Moreover, Plaintiffs object to the extent that it purports to require a detailed narrative of Plaintiffs' case which is improper, overbroad, and oppressive. Finally, the information sought by this interrogatory is equally available to Defendants. Plaintiffs object because this is unduly burdensome to the extent the request seeks documents already provided to Defendants, or Plaintiffs are providing these documents responsive to another Request. Plaintiffs object to production to the extent that the request calls for information protected from disclosure by the work product doctrine or privilege. See Plaintiff's *Ex Parte* Motion and Memorandum in Support of a Temporary Restraining Order With an Asset Freeze, Appointment of Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue, including supporting documents filed as Volumes I and II [Dkt. 4] including declaration of Emil George, PX03 for the discussion of revenue and the calculation of consumer redress; Plaintiffs' Reply to Defendants' Response to TRO [Dkt. 43], Receiver's Report [Dkt. 49] and the production by Plaintiffs of a hard drive containing images of Defendants' computers that was delivered to Attorney Robert Nicholson.

(Doc. 178-2 at 10).

Defendants argue that this interrogatory is not an objectionable contention interrogatory because it "asks a simple question: when and how?" (Doc. 178 at 9). Defendants argue that because this case is "at the end of the discovery process, Plaintiffs should be able to answer." (*Id.*). Indeed, Defendants argue that this question seeks to address "an essential element of their claim and, indeed, the bedrock of the entire case" and that "[a]ll it will take is . . . an application of the law to the facts." (*Id.*). Defendants argue that, "[i]f at this point in the case Plaintiffs are not readily able to answer this question, then they should amend their complaint appropriately or voluntarily dismiss the case." (*Id.*).

Additionally, Defendants take issue with Plaintiffs characterization that the information sought by Interrogatory No. 14 is "equally available to Defendants." (*Id.*). Defendants state their "belief that they did not break the law." (*Id.* at 9). Defendants argue that they "are unable to construct a violation where they believe none exists." (*Id.*).

Finally, Defendants contest Plaintiffs' assertions that the work product protection applies to prevent disclosure here. (*Id.* at 10). Defendants argue that Interrogatory No. 14 "simply asks for the *facts* Plaintiffs intend to apply to the law they assert Defendants violated here." (*Id.* (emphasis in original)). Defendants argue that "[t]his is plainly discoverable and does not fall under any privilege." (*Id.*). Moreover, Defendants argue that "[i]f opinion work-product is implicated by this interrogatory, it can be easily segregated and redacted by Plaintiffs." (*Id.*).

In response, Plaintiffs argue that "[p]roof of the pervasive violations is found in the Defendants' myriad scripts and sales calls containing phony diagnostics and false claims about the security or performance issues on consumers' computers." (Doc. 189 at 7). Additionally, Plaintiffs argue that "[d]epositions of current and former employees corroborate the deceptive tactics employed by Defendants" and that "Plaintiffs' tech support fraud expert's report opines on the common deceptive claims found in some of Defendants' scripts that are believed to have been used throughout the period that Defendants were selling security software and other products and services." (*Id.*). Plaintiffs argue that "these documents show the deceptive conduct was pervasive and permeated the business." (*Id.*). As a result, "Plaintiffs are seeking unjust enrichment practices for the entire period starting from commencement of business until May 3, 2017." (*Id.*).

Plaintiffs further argue that "neither intent to deceive nor evidence that consumers have actually been misled is required for a finding of liability in an FTC action." (*Id.* (citation omitted

because it is incomplete).  Indeed, Plaintiffs argue that "the FTC need not prove reliance by each consumer misled by Defendants."  (*Id.* at 8 (citing *SlimAmerica*, 77 F. Supp. 2d at 1275).  As a result, Plaintiffs request that the Motion be denied as to Interrogatory No. 14.  (*See id.*).

After careful review of the parties' arguments, the Court sustains Plaintiffs' objections and denies Defendants' Motion as to Interrogatory No. 14.  Here, Defendants asked Plaintiffs to "[i]dentify all instances where the Defendants successfully sold a product or a service."  (Doc. 178-1 at 1).  Nevertheless, it does not appear that Plaintiffs must prove that every sale of a product or service by Defendants necessarily violated the Federal Trade Commission Act ("FTC Act") or the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  (*See* Doc. 189 at 8).

Indeed, as noted by this Court previously, an "unfair practice" under § 5(a) of the FTC action is one that (1) causes or is likely to cause substantial injury to consumers, (2) which is not reasonably avoidable by consumers themselves, and (3) not outweighed by countervailing benefits to consumers or to competition.  *FTC v. Direct Benefits Grp., LLC*, No. 6:11-cv-1186-ORL-28, 2013 WL 3771322, at *13 (M.D. Fla. July 18, 2013) (citing *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1193 (10th Cir. 2009) which in turn quotes 15 U.S.C. § 45(n)).  An unfair practice does not require knowledge of consumer harm.  *Id.* (citing *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1156 (9th Cir. 2010)).  Moreover, it is not necessary for the FTC to show actual reliance by each individual consumer.  *SlimAmerica, Inc.*, 77 F. Supp. 2d at 1275.  Instead, "[r]eliance may be inferred where the deceptive acts and practices were 'the type of misrepresentation[s] on which a reasonably prudent person would rely, they were widely disseminated, and injured consumers who purchased [the product].'"  *Id.* (citing *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991)).  Furthermore, the same considerations under the

FTC Act are equally applicable to the State of Florida's claims under FDUTPA because "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [§] 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. [§] 45(a)(1) as of July 1, 2017."  Fla. Stat. § 501.204.

Here, given that Plaintiffs need not prove actual harm or the reliance of individual customers in proving their claims, the Court is hard-pressed to find that ordering the production of every possible instance of a successfully sold product or a service by Defendants as it relates to the counts asserted by Plaintiffs is proportional to the needs of this case.  *See Direct Benefits Grp.*, 2013 WL 3771322, at *13; *SlimAmerica, Inc.*, 77 F. Supp. 2d at 1275.  While some lesser request might be deemed proportional, the Court finds that Defendants have not demonstrated why such expansive discovery is proportional here.  Accordingly, Defendants' Motion is due to be denied as to Interrogatory No. 14.  The Court declines to address Plaintiffs' other objections.

### F.     Interrogatory No. 15

Finally, Defendants' Interrogatory No. 15 states:  "[i]dentify all consumer injuries referenced in paragraph 54 of the Complaint."  (Doc. 178-1 at 12).

Plaintiffs' response states:

> The identity and the amount of loss suffered by Defendants' consumers is in the financial and business records of Defendants.  These consumers include all consumers who were sold technical support services and products by Defendants using scripts that anticipate the same or similar outcome for all consumers regardless of the condition of their computers.  As discovery is ongoing, additional consumer injuries may be identified.  Plaintiffs object because this is unduly burdensome to the extent the request seeks documents already provided to Defendants, or Plaintiffs are providing these documents responsive to another Request.  Plaintiffs object to production to the extent that the request calls for information protected from disclosure by the work product doctrine or privilege.  See Plaintiff's Ex Parte Motion and Memorandum in Support of a Temporary Restraining Order With an Asset Freeze, Appointment of Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue, including supporting documents filed as Volumes I and II [Dkt. 4]

including declaration of Emil George, PX03 for the discussion of revenue and the calculation of consumer redress; Plaintiffs' Reply to Defendants' Response to TRO [Dkt. 43], Receiver's Report [Dkt. 49] including the production by Plaintiffs of a hard drive containing images of Defendants' computers that was delivered to Attorney Robert Nicholson.

(Doc. 178-2 at 16).

Here, as with Interrogatory No. 14, the Court finds that Defendants have not demonstrated why such expansive discovery is proportional here given that Plaintiffs need not prove actual harm or the reliance of individual customers. *See Direct Benefits Grp.*, 2013 WL 3771322, at *13; *SlimAmerica, Inc.*, 77 F. Supp. 2d at 1275. Defendants' Motion is due to be denied as to Interrogatory No. 15 for this reason. The Court declines to address Plaintiffs' other objections.

## G. Conclusion

For the reasons explained above, Defendants' Motion to Compel Amended Interrogatory Responses from Plaintiffs (Doc. 178) is granted in part and denied in part. Within fourteen (14) days from the date of this Order, Plaintiffs shall serve amended responses to Interrogatory Nos. 6 and 7.

## III. Plaintiffs' Motions for a Protective Order (Docs. 179, 186)

The Court next addresses Plaintiffs' Motions for a Protective Order (Docs. 179, 186). In their Motions, Plaintiffs both seek (1) to limit the scope of topics noticed by Defendants for a Fed. R. Civ. P. 30(b)(6) deposition and (2) to limit the request for documents at the time of the deposition. (*See* Docs. 179, 186)

Of note, after the Motions were filed, the Court cancelled the Rule 30(b)(6) depositions as to both the FTC (Doc. 184 at 2) and the State of Florida (Doc. 188 at 2). Additionally, the Court ordered that all deadlines be held in abeyance pending the Court's resolution of the

outstanding discovery motions. (Doc. 184 at 2). Accordingly, in resolving the issues raised by Plaintiffs' Motions, any topics found not objectionable are suitable for re-scheduled Rule 30(b)(6) depositions of Plaintiffs.

The Court first addresses Plaintiffs' objections to the deposition topics. Then, the Court addresses Plaintiffs' objections to Defendants' request for documents.

## A. Deposition Topics

Defendants served an Amended Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) on each Plaintiff. (Doc. 179-1; Doc. 186-1). Each Notice contained a list of eighteen (18) topics to be discussed at the depositions. (*Id.*). As an initial matter, the FTC does not object to four topics—Nos. 3, 6, 11, and 12. (Doc. 179 at 3 n.3). Similarly, the State of Florida does not object to Topic Nos. 11 and 12. (*See* Doc. 186 at 5). Because there are no objections to these topics, these topics are appropriate for re-scheduled Rule 30(b)(6) depositions.

As to the remaining topics, however, Plaintiffs each object to Defendants' deposition topics on three grounds. (Doc. 179 at 3; Doc. 186 at 3). First, Plaintiffs object to the topics to the extent that they require counsel to testify. (*Id.*). Second, Plaintiffs argue that many of the topics are not relevant to any claim or defense. (*Id.*). Finally, Plaintiffs contend that certain deposition topics would require the disclosure of privileged information. (*Id.*). The Court addresses Plaintiff's objections to Defendants' deposition topics in turn below, beginning with whether the deposition topics are relevant.

### 1. Relevancy

The Court addresses Plaintiffs' objections to relevancy first because the information sought by Defendants is either within the scope of discovery or it is not. *See* Fed. R. Civ. P.

26(b)(1). If the information sought is not within the scope of discovery, then the Court need not address Plaintiffs' other objections.

The FTC objects to Topic Nos. 1, 2, 4, 7, 8, 9, 13, 14, 15, 16, 17, and 18 in its deposition Notice based on relevancy. (Doc. 179 at 5; *see also* Doc. 179-1 at 1-2). The State of Florida objects to Topic Nos. 1, 2, 3, 4, 7, 8, 9, 10, 13, 14, 15, 16, 17, and 18 in its Notice based on relevancy. (Doc. 186 at 5; *see also* Doc. 186-1 at 1-3). Plaintiffs sort their relevancy objections into categories. (Doc. 179 at 11-15; Doc. 196 at 12-16). Although the deposition topics vary slightly between the Notices, Plaintiffs each assert six identical categorical objections to relevancy. (*See id.*). The State of Florida asserts an additional relevancy objection for Topic No. 10 in its Notice regarding the Employ Florida Work Opportunity Tax Credit program. (Doc. 186 at 16).

As an initial matter, Defendants argue that "[f]iling for a protective order before a Rule 30(b)(6) deposition, while not unprecedented, is generally disfavored." (Doc. 190 at 5-6 (citing *New World Network Ltd. v. M/V NORWEGIAN SEA*, No. 05-22916, 2007 WL 1068124, at *4 (S.D. Fla. Apr. 6, 2007)). Defendants argue that "[i]t is far more appropriate for Plaintiff to assert objections during the deposition and, if necessary, instruct the witness not to answer." (*Id.*). Although Defendants' arguments are well taken, the Court finds that in this instance it is more efficient to deal with Plaintiffs' categorical relevancy objections before the depositions so as not to delay the case further with extensive motion practice directed at the deposition topics after any re-scheduled deposition. The Court, therefore, addresses the categorical objections in addition to the specific objection raised by the State of Florida below.

*(i)* *Topics relating to Plaintiffs' investigation of Defendants*

Plaintiffs first argue that topics relating to their investigation of Defendants are not relevant—specifically, Topic Nos. 1, 2, 4, 7, and 18 as to the FTC and Topic Nos. 1, 3, 7, and 18 as to the State of Florida. (Doc. 179 at 11; Doc. 186 at 12). Plaintiffs argue that these topics seek information relating to their investigation of Defendants leading up to the filing of the Complaint. (Doc. 179 at 11; Doc. 186 at 12). Plaintiffs argue that this information is not relevant because "[t]he Supreme Court has held that the issuance of a complaint by a government agency is not reviewable." (*Id.* (both citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980)). Plaintiffs argue that the issue here is whether Defendants violated the law, not how Plaintiffs chose to conduct their investigation. (*Id.*).

In response, Defendants argue that the case cited by Plaintiffs, *Standard Oil*, is distinguishable because "this case is now in the trial phase" and because "Defendants do not seek to challenge the Complaint." (Doc. 182 at 12; Doc. 190 at 14). Additionally, Defendants argue that "the facts of the investigation are discoverable." (Doc. 182 at 12-13; Doc. 190 at 14 (both citing *A.R. ex rel. Root v. Dudek*, 304 F.R.D. 668, 671 (S.D. Fla. 2015)).

The Court agrees with Defendants. Here, it does not appear that Defendants are seeking information about the issuance of Plaintiffs' Complaint. Instead, Defendants' deposition topics appear to seek information regarding the facts underlying Plaintiffs' allegations. On this point, this Court has previously held – in another case brought by the FTC – that the defendants could use a Rule 30(b)(6) deposition to seek the facts supporting the FTC's allegations. *See FTC v. CyberSpy Software, LLC*, No. 6:08-CV-1872-ORL-31, 2009 WL 8708856, at *2 (M.D. Fla. May 26, 2009). Additionally, as pointed out by Defendants, courts have held that defendants "should be able to inquire into the facts upon which a plaintiff relies in support of its complaint." *Dudek*,

304 F.R.D. at 670-71. Based on the foregoing, the Court finds that the facts obtained by

Plaintiffs' investigation of Defendants' alleged unlawful conduct are clearly relevant to the

claims and defenses of this action because they address the factual foundation for Plaintiffs'

allegations. *See id.*; *CyberSpy Software, LLC*, 2009 WL 8708856, at *2. The Court, therefore,

denies Plaintiffs' Motion on this ground.[1]

(ii)  *Topics relating to notices posted on websites*

Operation Tech Trap is a name used by Plaintiffs "to describe a number of cases against

unrelated defendants concerning technical support services." (Doc. 179 at 10 n.8; Doc. 186 at 11

n.9). Plaintiffs argue that deposition topics related to public proclamations such as notices

posted on websites and/or any public statements about Operation Tech Trap are not relevant.

(Doc. 179 at 11; Doc. 186 at 13).[2] Plaintiffs contend that the fact that they issued press releases

or any other public statement is not relevant to a claim or defense in this action. (*Id.*). Plaintiffs

further contend that "testimony about government enforcement against others in the same or

similar industry is not relevant to the claims or defenses of a party." (*Id.* (both citing *FTC v.

Accusearch, Inc.*, No. 06-CV-105-D, slip op. at *6 (D. Wyo. Jan. 11, 2007)).

In response, Defendants argue that "the facts underlying *public* proclamations made by

Plaintiffs about this case are plainly discoverable and relevant." (Doc. 182 at 13; Doc. 190 at 14

(emphasis in original)). Defendants further argue that information about Operation Tech Trap is

relevant because Plaintiffs asked Defendants questions at depositions about Defendants'

knowledge of other third-party enforcement actions brought by Plaintiffs. (*Id.*). Defendants

---

[1]  The Court's ruling does not preclude Plaintiffs from asserting other objections regarding this
topic, including objections based on any privilege.

[2]  Specifically, these topics are Topic No. 4 as to the FTC and Topic No. 2 as to the State of
Florida. (Doc. 179 at 11; Doc. 186 at 13).

state that they testified that these enforcement actions had a direct impact on their behavior. (*Id.* (citations omitted)). Given that Plaintiffs asked them such questions in their depositions, Defendants argue that they should be able to do the same. (*See id.*).

In reviewing this issue, the Court notes that Topic No. 4 as to the FTC seeks to discuss "[t]he process, decision-making, individuals involved, and evidentiary basis for any and all notices posted to the FTC's website (www.ftc.gov) or elsewhere regarding Operation Tech Trap and any defendant." (Doc. 179-1 at 2). Topic No. 2 as to the State of Florida seeks to discuss "[a]ny public statements, whether oral or written, regarding Florida's participation in Operation Tech Trap and any action brought by the State thereunder, including, but not limited to, any public statements regarding Defendants." (Doc. 186-1 at 2).

These topics show that Defendants are seeking information about (1) the process, (2) the decision-making, (3) the individuals involved, and (4) the evidentiary basis for the notices and/or public statements as to both Plaintiffs. (*See* Doc. 179-1 at 2; Doc. 186-1 at 2). The Court, however, cannot determine any connection between (1) the process, (2) the decision-making, and (3) the individuals involved as it relates to the notices and/or public statements, on the one hand, and the claims and defenses in this action, on the other hand. *See* Fed. R. Civ. P. 26(b)(1). Information about the notices and/or public statements themselves is not logically related to any claim or defense in this action. Furthermore, while the "evidentiary basis" that informed any notices and/or public statements are relevant because they go directly to Defendants' potential culpability in this action, this information may be obtained through other deposition topics that are more reasonably tailored. The Court, therefore, grants Plaintiffs' Motions for Topic No. 4 as to the FTC and Topic No. 2 as to the State of Florida. These topics are stricken from the deposition Notices.

*Topics relating to any pre-existing relationship between Plaintiffs and the Receiver*

In bringing their Complaint, Plaintiffs moved *ex parte* for a temporary restraining order, which the Court issued on May 2, 2017. (*See* Doc. 9). As part of that Order, the Court appointed Barry Mukamal as Temporary Receiver. (*Id.* at 13). On June 4, 2017, the Court entered a Preliminary Injunction Order, in which the Court continued Mr. Mukamal's appointment as the Receiver. (Doc. 62 at 18).

Here, Plaintiffs argue that topics regarding Plaintiffs' pre-existing relationship(s) with the Receiver are not relevant to any claims or defense in this action. (Doc. 179 at 13; Doc. 186 at 14). Additionally, Plaintiffs argue that Defendants have not asserted any affirmative defense related to any pre-existing relationship with the Receiver. (*Id.*). Plaintiffs also argue that any other enforcement actions taken by them, regardless of whether Mr. Barry Mukamal served as the Receiver in those cases, are not relevant to the issues in the present action. (*Id.*).

In response, Defendants argue that Plaintiffs' communications with the Receiver are relevant because (1) the Receiver collected and produced much of the evidence in this case, (2) the Receiver was present on May 3, 2017 at the "immediate access," and (3) the Receiver has corresponded via email with Plaintiffs throughout this case. (Doc. 182 at 13; Doc. 190 at 15).[3] Defendants argue that they need know how the Plaintiffs and the Receiver worked together to obtain and authenticate evidence. (*Id.*).

Contrary to Defendants' position, the express language of the deposition topics in Defendants' Notices only seeks information regarding a "pre-existing relationship" with the Receiver, not information regarding the treatment of evidence by Plaintiffs and/or the Receiver.

---

[3] The "immediate access" is discussed in greater detail in the next subsection.

(*See id.*).  The Court is hard-pressed to see how any information regarding a pre-existing relationship between either Plaintiff and the Receiver has any bearing on a claim or defense here. Indeed, although the Receiver was appointed by the Court in this action, his relationship to either Plaintiff does not speak to whether Defendants actually engaged in the unlawful activity alleged nor does it speak to any defenses Defendants may have to Plaintiffs' allegations.  The Court, therefore, grants Plaintiffs' Motions for Topic No. 5 as to the FTC and Topic No. 4 as to the State of Florida.  These topics are stricken from the deposition Notices.[4]

*(iv)     Topics relating to the "immediate access"*

Pursuant to the Temporary Restraining Order (Doc. 9), Plaintiffs and the Receiver conducted an "immediate access" whereby the Receiver and Plaintiffs went to Defendants' place of business accompanied by law enforcement.  (Doc. 49-1 at 3).  At that time, Defendants' business operations were suspended pending the Receiver's evaluation of the business.  (*Id.* at 4). Defendants refer to the immediate access as a "raid."  (*See, e.g.*, Doc. 182 at 13).

Plaintiffs argue that Topic Nos. 7, 8, and 9 as to the FTC and Topic No. 5, 6, 7, 8, and 9 as to the State of Florida relating to the "immediate access" are not relevant to any claims or defenses in this action.  (Doc. 179 at 13; Doc. 186 at 14).

Defendants disagree, arguing that the evidence obtained at the "raid" is important.  (Doc. 182 at 14; Doc. 190 at 15).  For instance, Defendants argue that items such scripts that were allegedly open on employee computers will be relevant at trial.  (*Id.*).  Moreover, Defendants argue that how evidence was collected, protected, and authenticated are key issues that

---

[4]  In its Motion, Plaintiffs state that Topic No. 9 is objectionable on this basis.  (Doc. 179 at 13). This appears to be a scrivener's error because Topic No. 5, not Topic. No. 9, is the topic relating to the relationship between the FTC and the Receiver.  (*See* Doc. 179-1 at 2).

Defendants may contest. (*Id.*). As a result, Defendants contend that they must have access to this information in order to present a full defense." (*Id.*).

The Court finds Defendants' arguments persuasive. The "immediate access" was part of the injunctive relief sought by Plaintiffs' in their Complaint, (*see* Doc. 2 at 15), and granted by the Court in the Temporary Restraining Order, (*see* Doc. 9). Moreover, the evidence obtained at the "immediate access" is likely to have bearing not only on Plaintiffs' allegations of wrongdoing but also Defendants' potential defenses to those allegations. The Court, therefore, finds the "immediate access" is relevant to the claims and defenses in this action. Plaintiffs' Motion is denied on this ground.

### (v) Topics related to data security standards

Plaintiffs argue that Topic Nos. 13, 14, and 15 – as to both Plaintiffs – relating to data security standards are not relevant. (Doc. 179 at 14; Doc. 186 at 15). Indeed, Plaintiffs argue that neither Plaintiffs' data security standards nor Defendants' data security relates to any claim or defense in this case. (*Id.*). Moreover, Plaintiffs contend that Defendants' current counsel is attempting to conflate the issues in this case in an attempt to make an end run around discovery rules to benefit other defendants they represent in other actions against the FTC relating to data security. (*Id.*).

For their part, Defendants argue that the topics concerning data security are some of the most important for them because "[t]he bedrock of Plaintiffs' case, and indeed what the preliminary injunction rests on, is that Defendants are allegedly deceiving consumers into buying software products that they do not need." (Doc. 182 at 14; Doc. 190 at 15-16). Defendants argue that they will assert as a defense "that this software actually *was* needed or useful to the consumers, and, in any event, the software did what Defendants represented it would do." (Doc.

182 at 14; Doc. 190 at 16 (emphasis in original)).  Defendants further argue that Plaintiffs' data security standards represent fact evidence upon which this action is based and that this information "will be probative of Defendants' defense that the software sold was useful and necessary and will be helpful in cross-examining Plaintiff's expert witness."  (*Id.*).

The Court is persuaded by Defendants' arguments.  These deposition topics appear related to defenses Defendants intend to assert at trial.  Plaintiffs' Motion is denied on this ground.

*(vi)      Topics related to damages*

Plaintiffs argue that Topic Nos. 16 and 17 – as to both Plaintiffs – relating to damages and information about damage to consumers are not relevant.  (Doc. 179 at 15; Doc. 186 at 16).  Plaintiffs argue that they are not seeking monetary damages in this case but, instead are seeking equitable, monetary, and injunctive relief, including disgorgement of Defendants' unjust enrichment which they say a calculation of Defendants' gross revenues, minus refunds and chargebacks.  (*Id.*).

Defendants argue that Topic Nos. 16 and 17 are "plainly relevant."  (Doc. 182 at 14; Doc. 190 at 16).  Defendants argue that Plaintiffs are acting as if they have "already achieved a verdict under the standard and, thus, all damages are guaranteed."  (*Id.*).  Defendants state, however, that they may seek to limit damages at trial to a certain period of time.  (*Id.*).  Defendants argue that preventing them "from collecting valuable evidence on this topic prior to trial will severely hamper their ability to assert a full and fair defense."  (*Id.*).

Topic Nos. 16 and 17 are different in scope.  The Court, therefore, addresses them separately.

First, Topic No. 16 as to both Plaintiffs seeks "[t]he measure and amount of damages that the FTC asserts in this action." (Doc. 179-1 at 2; Doc. 186-1 at 3). The Court finds that this topic is relevant to the claims and defenses in this action because Plaintiffs are seeking damages. Although Defendants may have sought this information via other discovery mechanisms, Defendants are nonetheless also entitled to use a Rule 30(b)(6) deposition to elicit testimony to inquire as to the damages sought by Plaintiffs. *See CyberSpy Software*, 2009 WL 8708856, at *2. Plaintiffs' Motion is denied on this ground.

Topic No. 17, however, seeks "[t]he identities of all persons [Plaintiffs] allege[] were damaged by Defendants and the basis for asserting those damages." (*Id.*). While Plaintiffs' basis for asserting damages is relevant, Defendants have not shown a need for or relevance of the identities of all persons that Plaintiffs allege were damaged by Defendants. As discussed above, Plaintiffs are not required to prove actual harm or the reliance of individual customers. *See Direct Benefits Grp.*, 2013 WL 3771322, at *13; *SlimAmerica, Inc.*, 77 F. Supp. 2d at 1275. This topic is, therefore, not relevant or proportional to the needs of this case. On this point, however, the Court notes that Plaintiffs did not specifically object based on proportionality in their Motions as to this topic. (Doc. 179 at 15; Doc. 186 at 16). Even so, consistent with Plaintiffs' objections to Defendants' Motion to Compel, the Court finds that good cause exists to grant a protective order as to this deposition topic. Topic No. 17 is stricken.

In sum, Plaintiffs' Motion is denied as to Topic No. 16 but granted as to Topic No. 17.

### (vii) *Topic No. 10 as to the State of Florida regarding the Employ Florida Work Opportunity Tax Credit*

Finally, the Court addresses the State of Florida's objection to Topic No. 10 regarding the Employ Florida Work Opportunity Tax Credit program. (Doc. 186 at 16). Topic No. 10 seeks information regarding "[t]he Employ Florida Work Opportunity Tax Credit program and the

interaction between that program and any attempts by the State to simultaneously penalize Floridians for participating in the program and/or complying with its goals." (Doc. 186-1 at 2).

The State of Florida argues that it is not seeking relief under the Employ Florida Work Opportunity Tax Credit program and that Defendants have not asserted any affirmative defense related this tax credit. (Doc. 186 at 16). As a result, the State of Florida argues that "Topic 10 is completely outside the realm of relevance and should be stricken for purposes of the 30(b)(6) deposition of the State of Florida." (*Id.*).

In response, Defendants state that Plaintiffs asked Defendants questions about hiring felons in their depositions. (Doc. 190 at 14-15). Defendants essentially argue that they should be allowed to do the same at their deposition. (*See id.*).

Here, although Plaintiffs apparently asked Defendants certain questions relating to the Employ Florida Work Opportunity Tax Credit program at depositions, the Court nevertheless agrees with the State of Florida that Topic No. 10 is not logically related to any claim or defense in this action. The Court, therefore, grants the State of Florida's Motions as to Topic No. 10. This topic is stricken from the deposition Notice.

### (viii)   Conclusion

In sum, the FTC's Motion (Doc. 179) is due to be granted as to Topic Nos. 4, 5, and 17. The State of Florida's Motion (Doc. 186) is due to be granted as to Topic Nos. 2, 4, 10, and 17. These topics are stricken from Defendants' deposition Notices. Plaintiffs' Motions are otherwise denied as to relevancy.

## 2. Choice of Rule 30(b)(6) Deponent

Having addressed Plaintiffs' relevancy grounds, the Court addresses Plaintiffs' argument that Defendants' Rule 30(b)(6) deposition Notices improperly seek deposition testimony from Plaintiffs' counsel.  (Doc. 179 at 5; Doc. 186 at 5).

Specifically, Plaintiffs argue that a protective order is warranted here because the only people who could provide the requested testimony are their counsel.  (*Id.*).  Plaintiffs contend that, unlike corporate litigants, they have "little independent knowledge of the relevant facts and circumstances in this matter."  (*Id.*).  Plaintiffs argue that they, as law enforcement agencies, compile and rely on testimony and documents from third parties or from Defendants themselves.  (*Id.*).  Plaintiffs argue that it is these individuals who have independent knowledge of those facts and circumstances.  (*Id.*).  Plaintiffs argue that, under statutory duty, they assign attorneys and individuals acting under their attorneys' direction to investigate allegedly unlawful acts in preparation for litigation.  (*Id.*).

Given the foregoing, Plaintiffs argue that depositions of opposing counsel are permitted only in limited circumstances.  (Doc. 179 at 6; Doc. 186 at 6 (both citing *United States ex rel. Baklid-Kunz v. Halifax Hosp. Medical Center*, 6:09-cv-1002, 2012 WL 3537070, at *5 (M.D. Fla. Aug. 14, 2012)).  Specifically, Plaintiffs contend that parties may depose opposing counsel only after showing (1) no other means exist to obtain the information than to depose counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.  (*Id.* (both citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).  Plaintiffs argue that Defendants fail to meet any factor.  (Doc. 179 at 7; Doc. 186 at 7).  Moreover, Plaintiffs contend that the issues they would face are not alleviated by having someone besides counsel testify.  (Doc. 179 at 8 n.5; Doc. 186 at 9 n.6).  Finally, to the extent

any relevant and nonprivileged information is requested, Plaintiffs contend that this information is more easily obtained by other means such as written interrogatories. (Doc. 179 at 8; Doc. 186 at 9).

In response, Defendants state that they have not requested that counsel for either Plaintiff testify. (Doc. 182 at 5; Doc. 190 at 7). Moreover, Defendants contend that they are entitled to facts via depositions even if those facts come through the testimony of counsel. (Doc. 182 at 5-6; Doc. 190 at 7 (citing *CyberSpy Software*, 2009 WL 8708856, at *2)). Further, Defendants contend that the *Shelton* criteria listed by Plaintiffs only applies to limit deposition questions of attorneys when (1) trial and/or litigation counsel are being deposed and (2) such questioning would expose litigation strategy in the pending case. (Doc. 182 at 7; Doc. 190 at 9 (citing *Redfish Key Villas Condominium Ass'n, Inc. v. Amerisure Ins. Co.*, 2:13-cv-241-FtM-29CM, 2014 WL 407960, at *2 (M.D. Fla. Feb. 3, 2014)). Defendants argue that neither scenario is present here. (*Id.*). Finally, Defendants contend that at least one judge in this District has rejected Plaintiffs' "independent knowledge" argument. (*Id.* (citing *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011))).

In reviewing this issue, the Court notes that there are decisions within this District both granting protection relating to Rule 30(b)(6) depositions and denying protection. *Compare Baklid-Kunz*, 2012 WL 3537070, at *5, *with CyberSpy Software*, 2009 WL 8708856, at *3.

For instance, in *United States ex rel. Baklid-Kunz v. Halifax Hospital Medical Center*, United States Magistrate Judge Thomas B. Smith denied the defendant's motion to compel the Government to designate a Rule 30(b)(6) witness. 2012 WL 3537070, at *5. In denying the motion, Judge Smith noted that the Government had objected to deposition topics asking it to produce a witness to testify about how it made legal determinations, the "identification and

factual explanation" of "laws, regulations, polices and guidance" on issues of law, and to provide its "factual interpretation of laws, regulations, polices and guidance" on a legal issue. *Id.* at *4.

Judge Smith found that the use of the word "factual" was of no consequence. *Id.* Instead, Judge Smith found that the clear point of the topics was to get the United States "to disclose how they have interpreted and applied the law and government policies to the facts of this case." *Id.* Judge Smith reasoned that if the United States were required to produce a witness in response to these topics, however, "it would necessarily have to provide its legal theories and positions on important issues" and "would also have to reveal what facts its attorneys believe apply to these issues and how counsel intend to marshal the facts to support the United States' position." *Id.* Judge Smith found that this information is opinion work product and, thus, protected by the work product privilege. *Id.* (citations omitted).

Furthermore, Judge Smith found that "[i]t would be difficult and time consuming for the United States to prepare a non-lawyer witness to testify on these topics." *Id.* at *5. Indeed, Judge Smith stated that "the preparation of that witness would almost certainly result in the disclosure of work product privileged information so that the deposition of any non-lawyer would be the functional equivalent of deposing the attorneys for the United States." *Id.* As a result, Judge Smith further rejected the approach of other judges suggesting that the United States should produce a witness and then have counsel interpose objections and/or instruct the witness not to answer when appropriate. *Id.* (citations omitted). Judge Smith found that "[t]his approach risks the disclosure of privileged information, it would increase the burden on the United States to prepare a witness, and it would increase the burden on this Court which would likely have to make many otherwise unnecessary decisions about issues of work product

privilege." *Id.* Thus, Judge Smith upheld the United States' objections and denied the motion. *Id.*

On the other hand, in *FTC v. CyberSpy Software, LLC*, United States Magistrate Judge Gregory J. Kelly denied a motion for a protective order filed by the FTC to quash the defendants' Rule 30(b)(6) deposition notice. 2009 WL 8708856, at *3. In denying the motion, Judge Kelly found that although the FTC is a governmental agency, it "is not immune from Rule 30(b)(6) designations." *Id.* (citing Fed. R. Civ. P. 30(b)(6)). Further, Judge Kelly noted that both Rule 30(b)(6) and the notice itself allowed the FTC "to designate whom it wishes to provide testimony." *Id.* (citations omitted). As a result, Judge Kelly found that the issue was not whether the defendants were entitled under *Shelton* to depose the FTC's trial counsel. *Id.* Instead, Judge Kelly found that the issue was whether the defendants were entitled to a Rule 30(b)(6) deposition of a governmental agency regarding the facts supporting the agency's case. *Id.* Judge Kelly found that the defendants were entitled to such a deposition. *Id.*

In making this finding, Judge Kelly noted that it was "the FTC's prerogative to designate which person(s) will testify." *Id.* Even so, Judge Kelly held that "Rule 30(b)(6) is specifically applicable to governmental agencies." *Id.* Moreover, Judge Kelly held that the defendants were "entitled to discovery of the facts supporting the FTC's claims." *Id.* (citation omitted). Thus, the Court denied the FTC's attempt to quash the FTC's deposition notice. *Id.*

Although the jurists came to different conclusions, the above-cited decisions appear to be in harmony. Indeed, a key difference between these cases is the information sought by the deposition notices. *Compare Baklid-Kunz*, 2012 WL 3537070, at *5, *with CyberSpy Softwar*e, 2009 WL 8708856, at *3. In *Baklid-Kunz*, the deposition topics sought testimony from the Government about (1) how it made legal determinations, (2) the "identification and factual

explanation" of "laws, regulations, polices and guidance" on issues of law, and (3) its "factual interpretation of laws, regulations, polices and guidance" on legal issues. *See* 2012 WL 3537070, at *5. The Court granted protection because the information sought could only be considered work product. *Id.* Conversely, however, in *CyberSpy Softwar*e, the Court denied the FTC's request for protection when the defendants merely sought to discover the facts supporting the FTC's claims. *See* 2009 WL 8708856, at *3.

A review of the deposition Notices here shows that, with the exception of two topics as to each Plaintiff, Defendants topics appear to seek the *facts* supporting the Plaintiffs' claims, not opinion work product by Plaintiffs. For the most part, unlike *Baklid-Kunz*, the questions do not seek testimony from Plaintiffs that can only be considered work product. *See* 2012 WL 3537070, at *5. For instance, the deposition topics do not appear to require Plaintiffs' counsel to testify and to provide legal theories and positions on important issues or to reveal what facts counsel believed apply to these issues. *See id.* Instead, Defendants' questions here appear specifically tailored to discovering facts regarding Plaintiffs' factual allegations. *See CyberSpy Software*, 2009 WL 8708856, at *3.

As a result, as in *CyberSpy Software*, the issue here is not whether Defendants are entitled under *Shelton* to depose the FTC's trial counsel. *See id.* In this case, it does not appear that Plaintiffs are specifically seeking to depose trial counsel. Instead, the question here, much like *CyberSpy Software*, is whether Defendants are entitled to Rule 30(b)(6) depositions of governmental agencies regarding the facts supporting the agencies' case. *See id.* Like *CyberSpy Software*, the Court finds that Defendants are entitled to such depositions. *See id.*

Indeed, as the Court in *CyberSpy Software* noted, governmental agencies are "not immune from Rule 30(b)(6) designations." *See id.* Moreover, like *CyberSpy Software*, Plaintiffs

may choose the deponent(s). *See id.* Even so, as in *CyberSpy Software*, because Defendants are entitled to discovery of the facts supporting Plaintiffs claims, the Court declines to grant wholesale protection to Plaintiffs regarding the deposition Notices. *See id.*

Notwithstanding these findings, Topic Nos. 15 and 18 as to both Plaintiffs are clearly objectionable under *Baklid-Kunz*. *See* 2012 WL 3537070, at *5. Topic No. 15 seeks "[Plaintiffs'] position on what recourse a technical service customer would have if he or she called a technical support service company and was told that anti-virus software was adequate to protect his or her computer and no anti-malware software was needed when, in fact, the customer was later negatively affected by malware." (Doc. 179-1 at 2; Doc. 186-1 at 2). Topic No. 18 seeks "[k]nowledge of any consideration [Plaintiffs] gave to the overall balance of harms relevant to this action, such as the negative impact the Preliminary Injunction would have on consumers who had lifetime service contracts with Defendants." (Doc. 179-1 at 2; Doc. 186-1 at 3).

Like *Baklid-Kunz*, these questions would require Plaintiffs' counsel to testify and to provide legal theories and positions on important issues in addition to revealing what facts counsel believed apply to these issues. 2012 WL 3537070, at *5. As in *Baklid-Kunz*, the Court finds that this is protected work product. *See id.* Moreover, like *Baklid-Kunz*, designating someone other than counsel will not cure this issue because the preparation of the witness(es) would likely result in the disclosure of work product privileged information such that the deposition of any non-lawyer would be the functional equivalent of deposing the attorneys for Plaintiffs. *See id.* The Court, therefore, grants Plaintiffs' Motions as to Topic Nos. 15 and 18. These topics are stricken from Defendants' deposition Notices.

### 3.      Privilege

Plaintiffs' final objections deal with privilege.  Although Plaintiffs may enjoy a number of privileges, the Court declines to address Plaintiffs' privilege objections here before Defendants have actually sought any privileged information.  Indeed, the Court is not certain that Defendants' questions at the depositions will actually seek privileged information at all.  For this reason, the Court finds that it cannot adequately review Plaintiffs' claims of privilege at this time.  As a result, the Court finds it more appropriate for Defendants to proceed with the deposition and then have Plaintiffs' counsel object to any questions seeking privileged information.  Plaintiffs may renew their privilege objections at such time that it becomes necessary.

### B.      Defendants' Document Requests

Finally, the Court addresses Plaintiffs' objections to Defendants' request that Plaintiffs produce documents at the time of the depositions.  Plaintiffs argue that Defendants' deposition Notices fail to comply with Fed. R. Civ. P. 34.  (Doc. 179 at 23; Doc. 186 at 24).  Specifically, Plaintiffs argue that the Rule 30(b)(6) deposition notices must comply with Fed. R. Civ. P. 34 in that the notices must provide Plaintiffs at least thirty (30) days for production of the documents.  (*Id.*).  Here, however, Plaintiffs state that both Notices provided less than thirty days to respond.  (*Id.*).  As a result, Plaintiffs argue that Defendants' document requests should be stricken.  (*Id.*).

In response, Defendants argue that they served appropriate document requests.  (Doc. 182 at 17; Doc. 190 at 19).

Here, the Court notes that it cancelled the Rule 30(b)(6) depositions as to both the FTC (Doc. 184 at 2) and the State of Florida (Doc. 188 at 2).  Given that the depositions were previously cancelled, the re-scheduled depositions can be set with sufficient time to allow for

Plaintiffs to produce the subject documents. The Court, therefore, denies Plaintiffs' Motion on this ground. Plaintiffs may object to specific document requests at the time they respond to the document requests in full.

**IV.     Case Management Related Issues**

Given the rulings above, re-scheduled Rule 30(b)(6) depositions of Plaintiffs are appropriate. To facilitate their completion, the parties are ordered to meet and confer to discuss rescheduling Plaintiffs' Rule 30(b)(6) depositions within fourteen (14) days from the date of this Order. Absent a showing of good cause, the rescheduled depositions shall occur within the next forty-five (45) days.

Additionally, on February 27, 2018, the Court ordered that all deadlines be held in abeyance pending the Court's resolution of the outstanding discovery motions. (Doc. 184 at 2). In light of this Order fully resolving the parties' discovery Motions, the Court further orders the parties to meet and confer regarding all remaining case management deadlines. The parties shall file an amended Case Management Report within fourteen (14) days from the date of this Order proposing new case management deadlines, including the trial term.

**CONCLUSION**

For the reasons stated above, the Court hereby **ORDERS** that:

1) Defendants' Motion to Compel Amended Interrogatory Responses from Plaintiffs (Doc. 178) is **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

2) Plaintiff Federal Trade Commission's Motion for a Protective Order to Prevent Certain Topics Noticed by Defendants for a 30(b)(6) Deposition of the Federal Trade Commission and Their Request That the Agency Produce Documents at the Time of

the Deposition (Doc. 179) is **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

3) Plaintiff State of Florida's Motion for a Protective Order to Limit the Scope of Topics Noticed by Defendants for a 30(b)(6) Deposition and the Request for Documents at the Time of the Deposition (Doc. 186) is **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

4) The parties shall meet and confer to discuss rescheduling Plaintiffs' Rule 30(b)(6) depositions within fourteen (14) days from the date of this Order. The Rule 30(b)(6) depositions of Plaintiffs shall occur within forty-five (45) days from the date of this Order.

5) The parties shall file an amended Case Management Report within fourteen (14) days from the date of this Order proposing new case management deadlines, including the trial term.

**DONE AND ORDERED** in Fort Myers, Florida on August 2, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties