**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

FEDERAL TRADE COMMISSION, and the

STATE OF FLORIDA,

          Plaintiffs,

      v.

VYLAH TEC LLC, a limited liability company,
also d/b/a VTEC SUPPORT;

EXPRESS TECH HELP LLC, a limited liability
company;

TECH CREW SUPPORT LLC, a limited liability
company;

ANGELO J. CUPO, individually and as owner
and CEO of Vylah Tec LLC and as manager of
Tech Crew Support LLC;

ROBERT CUPO, individually and as manager of
Vylah Tec LLC,  as owner, manager, director and
officer of Tech Crew Support LLC, and member
of Express Tech Help LLC,

          Defendants

Case No. 2:17-cv-228-PAM-MRM

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO THIRD**
**APPLICATION FOR RECEIVER'S FEES AND EXPENSES**

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.  The Temporary Restraining Order and Preliminary
            Injunction are clear that Receivership expenses are
            to be paid from the Receivership Estate. . . . . . . . . . . . . . . . . 3

        B.  The Receiver undertook many tasks at the behest of
            Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.  Defendants have waived their objections to the Receiver's
            method of payment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        D.  Sovereign immunity precludes the assessment of
            Receivership fees and expenses against the government
            Plaintiffs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**Cases**

*Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459 (Fla. 2005) . . . . . . . . .11

*Ashworth v. Glades County Bd. of County Commissioners*, 217-CV-577-FTM-99MRM, 2017 WL 6344209 (M.D. Fla. Dec. 12, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Atlantic Trust Co. v. Chapman*, 208 U.S. 360 (U.S. 1908). . . . . . . . . . . . . . . . . . . . . . . . . .4

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*City of Key W. v. Florida Keys Cmty. Coll.*, 81 So. 3d 494 (Fla. 3d DCA 2012) . . . . . . . . . 11

*Commercial Nat'l Bank v. Connolly*, 176 F.2d 1004 (5th Cir. 1949) . . . . . . . . . . . . . . . . . . . 5

*Donovan v. Robbins*, 588 F.Supp. 1268, 1273 (N.D.Ill.1984) . . . . . . . . . . . . . . . . . . . . . . . 7

*FTC v. Debt Advocacy Ctr.*, 2012 U.S. Dist. Lexis 200073 (N.D. Ohio 2012) . . . . . . . . . . . 7

*F.T.C. v. Direct Benefits Grp., LLC*, No. 6:11-CV-1186-ORL, 2013 WL 6408379 (M.D. Fla. Dec. 6, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*F.T.C. v. Home Assure, LLC*, 8;09-CV-547-T-23TBM, 2009 WL 1043956 (M.D. Fla. Apr. 16, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*F.T.C. v. Hardco Holding Grp. LLC*, No. 617CV1257ORL37TBS, 2017 WL 4700396, (M.D. Fla. Oct. 19, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*F.T.C. v. Innovative Wealth Builders, Inc.*, No. 8:13-CV-123-T-33EAJ, 2014 WL 5039538, (M.D. Fla. Sept. 30, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*F.T.C. v. JPM Accelerated Services, Inc.*, 2011 WL 4633102 (M.D. Fla. 2011) . . . . . . . . . . 4

*F.T.C. v. Vacation Communications Group, LLC*, 2013 WL 2467784 (M.D. Fla. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ingraham By & Through Ingraham v. Dade County Sch. Bd.*, 450 So. 2d 847 (Fla. 1984) . .11

*In re Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1549 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . .9

*Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Riverside Univ.*, 35 Cal App.3d 572 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010) . . . . . . . . . . . . 8

*Shotkin v. Beidler*, 70 F.2d 398 (3rd Cir. 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Nordic Vill. Inc.*, 503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*USA v. George*, 420 F.3d 991 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*W.F. Potts Son & Co. v. Cochrane,* 59 F.2d 375 (5th Cir. 1932) . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes:**

28 U.S.C. § 1920 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,10

28 U.S.C. § 2412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 9, 10

Florida Constitution, Article X, Section 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Florida Deceptive and Unfair Trade Practices Act, Section 501.207(c)(3) . . . . . . . . . . . . . . 5

Florida Statutes, Section 768.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Plaintiffs, Federal Trade Commission ("FTC") and Office of the Attorney General, State of Florida, Department of Legal Affairs ("Attorney General"), by and through the undersigned counsel, respond to Defendants' Opposition to Third Application for Receiver's Fees and Expenses ("Opposition") (Doc. 417) and state as follows:

## I.    INTRODUCTION

In this case, the Court appointed a Temporary Receiver over Defendants' business. Subsequently, the Court converted the Temporary Receiver to a Permanent Receiver and maintained the Receiver for the pendency of the case.  Defendants now argue that the Receiver should not be paid from the receivership estate and should be paid by Plaintiffs.  This Court should reject Defendants' assertions for several reasons.

First, Defendants ignore the prior orders that are explicit in identifying the funds to be used for the Receiver's compensation.  In fact, during the discussions about the Preliminary Injunction, Defendants were agreeable to the maintaining of the Receiver under certain circumstances, but nowhere did Defendants object to language in the Preliminary Injunction[1] that stated precisely how the Receiver would be compensated.  Instead, Defendants waited more than two years until the final judgment holding individual and corporate Defendants liable had been entered to now balk at Receivership funds being used to pay for the Receiver's services.

Second, Defendants ignore the doctrine of sovereign immunity founded in 28 U.S.C. §§1920 and 2412 and the Florida Constitution, which preclude parties from seeking costs and attorney fees against government Plaintiffs.  Defendants' argument is inconsistent with long-standing principles of sovereign immunity, which dictate that only certain expenses enumerated by statute may be charged to the government.  In this case, government Plaintiffs have not

---

[1] Defendants have filed two appeals to the Eleventh Circuit, including an appeal of the Preliminary Injunction, neither of which challenged the Receiver's payment method.  Case Nos. 17-13481 and 19-10325.

waived sovereign immunity; moreover, receivership expense are not among the enumerated expenses that may be charged to the government.  The cases that Defendants cite in support of its position are inapposite and do not involve government parties or do not involve Defendants, like the ones here, who have been found liable for widespread deceptive practices and enjoined from future problematic practices by court order.

Therefore, this Court should reject Defendants' arguments and allow the Receiver to be compensated as has been contemplated since this appointment-- "from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants."

## II.    HISTORY

On May 2, 2017, this Court issued a temporary restraining order against individual and corporate Defendants, based on its finding that "Plaintiffs have sufficiently shown that Defendants have engaged in and are likely to engage in acts and practices that violate [the FTC Act and FDUPTA] and thus are likely to prevail on the merits of this action."  On June 4, 2017, after a hearing, this Court made the same finding and issued a Preliminary Injunction.  In fact, for the Preliminary Injunction, Defendants stipulated to a Preliminary Injunction, including the Receiver, and did not object to the payment or the method of payment of the Receiver.  When issuing both the TRO and Preliminary Injunction, the Court appointed Barry Mukamal as the Court's Receiver "for the business activities of the Receivership Defendants"[2] and "to be the agent of this Court and solely the agent of this Court" in acting as the Receiver under this Order. The Receiver was made accountable directly to this Court.  These Orders empowered the Receiver to, *inter alia*, to employ attorneys, accountants and other staff to assist in the performance of Receivership duties and responsibilities; to marshal corporate assets; and to open bank accounts to manage Receivership Defendants' funds and to make payments and

---

[2] The TRO and Preliminary Injunction defined Receivership Defendants as the "Corporate Defendants."

disbursements from the Receivership estate. The Temporary Restraining and Preliminary Injunction Orders entered by this Court expressly allows reasonable compensation for the Receiver to be paid from the assets held in receivership.

Defendants appealed the Preliminary Injunction seeking that the entire order be vacated. However, in their appeal, Defendants failed to challenge the Receiver's entitlement to compensation or to the method of compensation.  In fact, the Eleventh Circuit agreed with the Plaintiffs and concluded that Defendants had in fact effectively stipulated to the imposition of the preliminary injunction, which included the provisions for compensating the Receiver that they now protest. (Doc. 192).[3]

On June 10, 2019, this Court entered judgment against individual and corporate Defendants, finding them liable for federal and state violations of consumer protection laws and issuing extensive injunctive relief against them.

### III.   ARGUMENT

#### A.  The Temporary Restraining Order and Preliminary Injunction are clear that Receivership expenses are to be paid from the Receivership Estate.

Defendants incorrectly assert that, based upon equity, Plaintiffs should be responsible for paying the Receivers' expenses.  However, the court orders issued in this case make it clear the Receivership expenses would be paid from the assets held in the receivership estate.  Sections XIV of the Temporary Restraining Order and XV of the Preliminary Injunction both state:

> the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets

---

[3] In the district court, Defendants stated they were "agreeable" to an injunction, that they did not "overtly object[ ]" to an injunction, and that they were not arguing no injunction should issue. In fact, Defendants asked—twice—that the district court grant an injunction. [CITE] The Eleventh Circuit found that Defendants had conceded to an injunction.

> now held by or in the possession or control of, or which may be
> received by, the Receivership Defendants.  The Temporary Receiver
> shall file with the Court and serve on the parties periodic requests
> for the payment of such reasonable compensation, with the first
> such request filed no more than sixty (60) days after the date of
> this Order.

Additionally, when ruling in the Final Judgment that Plaintiffs had not shown a

reasonable calculation of monetary relief, this Court did not rule that the remaining funds should

be unfrozen and returned to Defendants, but instead made it clear that the Receiver's fee motions

should be resolved.  There are funds available, and thus, the Receiver, who has properly served

in his role and has properly carried out the lawful order of the Court, should be fairly

compensated using the funds held by the Receivership estate as outlined in the Preliminary

Injunction order.

Moreover, contrary to Defendants' assertions, the Court controls the Receiver and

Receivership estate.  Receivership expenses are the responsibility of the Receivership estate, not

the responsibility of Plaintiffs.[4]  It has long been held that "The receiver is but the creature of the

court; he has no powers except such as are conferred upon him by the order of his appointment

and the course and practice of the court." *Atlantic Trust Co. v. Chapman*, 208 U.S. 360, 371

(1908).  "We do not think that the mere insufficiency of the property or fund to meet the

expenses of a receivership entitled the receiver to hold the plaintiff in the suit personally liable, if

all that could be said was that he instituted the suit and moved for the appointment of the receiver

---

[4] Courts routinely include order provisions directing that receiver fees and expenses are to be paid out of the receivership estate. *See F.T.C. v. Home Assure, LLC*, 8;09-CV-547-T-23TBM, 2009 WL 1043956, at *14 (M.D. Fla. Apr. 16, 2009) (ordering that receivership fees should be paid from the receivership assets); *F.T.C. v. Vacation Communications Group, LLC*, 2013 WL 2467784, at *11 (M.D. Fla. 2013) (same); *F.T.C. v. JPM Accelerated Services, Inc.*, 2011 WL 4633102, at *1 (M.D. Fla. 2011) (authorizing receiver to make disbursements from the receivership estate); *F.T.C. v. Direct Benefits Grp., LLC*, No. 6:11-CV-1186-ORL, 2013 WL 6408379, at *5 (M.D. Fla. Dec. 6, 2013) (recommending receiver's fees and expenses be paid from receivership assets); *F.T.C. v. Innovative Wealth Builders, Inc.*, No. 8:13-CV-123-T-33EAJ, 2014 WL 5039538, at *2 (M.D. Fla. Sept. 30, 2014) (granting receiver's third application for fees and costs to be paid from remaining receivership funds); *F.T.C. v. Hardco Holding Grp. LLC*, No. 617CV1257ORL37TBS, 2017 WL 4700396, at *1 (M.D. Fla. Oct. 19, 2017) (Receiver's fees and expenses "to be paid from the Receivership Account once these funds are available.")

to take charge of the property and maintain and operate it pending the suit.  The liabilities which he incurs are liabilities chargeable upon the property under the control and in the possession of the court, and not liabilities of the parties." *See Atlantic Trust Co.*, 208 U.S. at 375.

The general rule is, when a receivership is proper, "the receivership fees and expense 'are a charge on the property administered,'" and "[w]ithout 'convincing evidence that the appointment of a receiver was either collusive, capricious, venal, or in bad faith,'" ordinarily the expenses of the receivership will not be charged "'other than against the fund administered by the receiver, even though the [c]ourts are vested with a discretion in determining who should pay the costs and expenses of a receivership in unusual instances.'" *Netsphere, Inc. v. Baron*, 703 F.3d 296, 311-312 (5th Cir. 2012), citing *Commercial Nat'l Bank v. Connolly*, 176 F.2d 1004, 1009 (5th Cir. 1949).

In the instant case, there is nothing unusual about the appointment of the Receiver, and Defendants have failed to provide any evidence showing his appointment was either collusive, capricious, venal, or in bad faith.  Thus, the Receiver should be compensated as previously ordered by this Court.

Although Defendants cite to *W.F. Potts Son & Co. v. Cochrane,* 59 F.2d 375, 377 (5th Cir. 1932), to bolster their argument that Plaintiffs should pay for the receiver's fees and expenses, that case is distinguishable.  The *WF Potts* parties were private litigants.  By contrast, the instant case is a government-initiated equitable enforcement action for violations of the FTC Act and FDUTPA and the Court has appointed the Receiver over the defendant corporations not once, but twice for the TRO  and then for the Preliminary Injunction.[5]

**B.  The Receiver undertook many tasks at the behest of Defendants.**

---

[5] Section 501.207(c)(3) of FDUTPA expressly authorizes the court to appoint a receiver, freeze assets, and order further equitable relief.

There has been no question that the Receiver performed tasks within the scope of his duties.[6] A substantial portion of the work that the Receiver and his counsel engaged in was at the request of the Defendants and their counsel.  (See the Magistrate's Report and Recommendation, Doc. 415, pp. 7-8)  This work for Defendants included the analysis of the operations and industry standards aimed towards Defendants' requested re-start of their business, with such efforts detailed in the first and third Receiver's reports and supplement, and the initial business orientation provided by the Cupos.  Certainly, Defendants have not objected to the propriety of the tasks performed by the Receiver, many of which were undertaken at the behest of Defendants.  For example, upon the repeated requests by Defendants that they be allowed to re-open the Vtec business, the Receiver was tasked with evaluating various iterations of Defendants' proposed business plans. As detailed in the Receiver's reports and motions,[7] he carefully and thoroughly reviewed each proposal submitted by Defendants.  Likewise, Defendants also set and cancelled the Receiver's deposition several times, even no-showing on one of the dates, thus expending costs for hours spent on preparing for and travel to Ft. Lauderdale.[8]  Similarly, because Defendants had failed to file their taxes in a timely manner prior to the instant matter commencing, the Receiver had spent substantial numbers of hours reconstructing financial documents and preparing the tax returns for filing.[9]  Moreover, in his Report and Recommendation to the Court, the Magistrate analyzed Defendants' arguments that

---

[6] On August 16, 2017, November 7, 2018, and June 11, 2019, the Receiver filed motions for fees and attorney costs, which describe and detail his activities and tasks performed in support of his duties as Receiver.
[7] ECF Nos. 99; 105; 106; 303 Page ID 14731 (The Receiver analyzed "multiple iterations of the Cupos' proposed operations" and had several conversations. "In order to analyze the ability of the Business to be run as the Cupos were proposing both lawfully and profitably, the Receiver reconciled various accounts, evaluated available customer data, analyzed the data mined from the Business records, reconciled accounts, and made multiple inquires in the marketplace to test the assumptions contained in the Cupo's proposed and skeletal pro formas.)
[8] ECF No. 419, note 11, Page ID 21092.
[9] ECF No. 303, Page ID 14731 (By example, Receiver benefitted Defendant corporations by working "with vendors and parties controlling Business data and fielded multiple inquires and supplementary responses from the Cupos to his required procedures and protocols.  The Receiver reconstructed the various accounts and accounting measure that the Business lacked and the Cupos had not addressed in their submissions"); ECF 412.

(1) the Receivership did not benefit the estate and (2) the receiver engaged in biased and partisan

litigation. His analysis concluded that (1) the Receiver benefited the estate by taking steps to

comply with the TRO and Preliminary Injunction, including preserving the Receivership

Defendants' assets and assessing whether the business could be run profitably and legally and (2)

there was no merit to Defendants' claim that the Receiver engaged in biased litigation or that the

Receiver provided litigation support for Plaintiffs. [10]

### C. Defendants have waived their objections to the Receiver's method of payment.

It is well-settled law that courts have broad discretion when determining who shall pay

the receiver and his/her counsel's fees. *SEC v. Elliott*, 953 F.2d 1560, 1576 (11th Cir. 1992)("The

court in equity may award the receiver fees from property securing a claim if the receiver's acts

have benefitted that property."). In most cases, the benefit is easy to determine, such as when the

receiver pays taxes on the property *Id.*, at 1576-77;  *see also FTC v. Debt Advocacy Ctr.*, Case

No. 1:09CV2712, 2012 U.S. Dist. Lexis 200073, at *6 (N.D. Ohio 2012); *Shotkin v. Beidler*, 70

F.2d 398 (3rd Cir. 1934), *USA v. George*, 420 F.3d 991, 998, Note 5 (9th Cir. 2005) quoting

*People v. Riverside Univ.*, 35 Cal App.3d 572, 587 (4th Cir.1973)("It is settled that fees awarded

to receivers are in the sound discretion of the trial court and in the absence of a clear showing of

an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees.").

Even though a receiver may not have increased, or prevented a decrease in, the value of the

collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to

compensation. *Donovan v. Robbins*, 588 F.Supp. 1268, 1273 (N.D. Ill. 1984) (the district court

awarded the receiver a fee simply for determining how much money to release to a creditor).  In

---

[10] ECF No. 415, Page ID 21022-23.

the case at hand, even Defendants concede that the Receiver has performed his duties and should be paid.[11]

Moreover, Defendants have waived any opportunity to object to the Receiver's method of payment at this late juncture.   Waiting until a final order has been issued to seek modifications of orders issued over two years is untimely.   Further, they failed to properly seek a modification of these orders by filing a motion to modify and instead attempt to go through the back door by objecting to the Receiver's motion for fees.   Although Defendants ostensibly claim there is a change in circumstance that allows them to object, this is simply untrue. First, the method of payment from the Receivership assets has remained unchanged since the orders were issued,[12] and in fact, Defendants agreed to extending the TRO at the conclusion of the Preliminary Injunction hearing without objecting to the TRO provisions pertaining to payment of the Receiver,[13] and Defendants did not object to the payment of the Receiver or the method of compensation of the Receiver in the Preliminary Injunction issued in June 2017.[14]

Further, a Court may not modify or vacate an interlocutory order on which one has justifiably relied. See *SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010). The principle of justifiable reliance is applicable in this action.  Plaintiffs sought appointment of a receiver, which the Court approved in granting the TRO in this case.  The Receiver accepted the appointment to serve as the Receiver based on terms of the TRO and continued his service

---

[11] Doc. 417 (Defendants' Opposition to Third Application for Receivers' Fees and Expenses, Section I).

[12] Defendants claim the Court should narrow the payment method for the Receiver's compensation to assets that can be traced to ill-gotten gains and rely on the Court's order which unfroze assets of former individual Defendant Dennis Cupo and assets jointly held by individual Defendant Robert Cupo and his wife.  Such reliance is misplaced because the individually-owned assets that were at issue were never under the purview of the receiver, who has been in control of solely corporate assets.

[13] ECF No. 50.

[14] ECF No. 62, Page ID 787; ECF No. 192, Page ID 2496. Defendants now claim the Court should limit the payment of the Receiver's compensation to assets that were traced to ill-gotten gains.  In making such assertion Defendants mistakenly rely on the Court's order which unfroze assets of former individual Defendant Dennis Cupo and assets jointly held by individual Defendant Robert Cupo and his wife.  Such reliance is misplaced because the individually-owned assets that were at issue in that order were never under the purview of the receivership estate, which has always consisted solely of corporate assets.

pursuant to the Preliminary Injunction.  If the Court now retroactively modifies these orders to remove corporate Defendants' assets from the Receivership estate, it would be modifying an order provision that Defendants could have sought, but failed to seek, modification of prior to the final judgment and on which the Receiver justifiably relied.  Moreover, any such retroactive revision of Sections XV and XIV is likely to discourage qualified firms and individuals from serving as equity receivers in government-initiated civil actions.  Such a retroactive modification of a legitimate order would signal that receivers have no assurance of compensation for work performed, regardless of the terms of a previous court order. More specifically, as discussed below, a modification here will cause undue hardship because no other funds exist to meet receivership expenses.

Further, the Court's decision not to disgorge Defendants' revenues was not an exoneration of their liability.  This Court, in fact, entered its final order finding Defendants liable for violations of federal and state consumer protection laws and ordered extensive injunctive relief against all Defendants.

### D.  Sovereign immunity precludes the assessment of Receivership fees and expenses against the government Plaintiffs.

The United States and its agencies are immune from claims for attorneys' fees and costs except to the extent that the government has waived sovereign immunity. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983). "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed" and construed strictly in favor of the federal government. *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33–34 (1992) (internal quotation marks omitted); *In re Jove Eng'g, Inc.* v. IRS, 92 F.ed 1539, 1549 (11th Cir. 1996).[15]  Therefore,

---

[15] 28 U.S.C. §2412 (a)(1) states:  Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title [28 USCS § 1920], but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A

statutory waiver is the only means the defense has to overcome sovereign immunity. In the

instant case, Plaintiff FTC has not waived sovereign immunity and Defendants have not cited to

any such statute because there is none that would be applicable here.

Defendants' argument that the Plaintiffs should pay the Receiver's fees and costs is

inconsistent with long-standing principles of sovereign immunity, which dictate that only certain

expenses enumerated by statute may be charged to the government.  In this case, neither the FTC

nor the Florida AG's office have waived sovereign immunity; moreover, receivership expense

are not among the enumerated expenses that may be charged to the government.  The cases that

Defendants cite in support of its position are inapposite and do not involve government parties or

Defendants, like the ones here.

Furthermore, Defendants are not the prevailing party.  Congress has waived the United

States' sovereign immunity for costs and attorneys' fees, but only for a "prevailing party." 28

U.S.C. § 2412(a), (b). A "prevailing party" is one that has secured a judgment on the merits or

reached a settlement agreement enforced through a consent decree. *Buckhannon Bd. & Care*

*Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). Although the

Court declined to enter the ancillary relief of disgorgement, Defendants did not prevail on the

merits of the case.  As discussed above, the Court found Defendants liable for widespread

deceptive practices in its tech support scheme in violation of Section 5 of the FTC Act and

---

judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.."  28 U.S.C. §1920 states: "A judge or clerk of any court of the United States may tax as costs the following:(1)  Fees of the clerk and marshal; (2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3)  Fees and disbursements for printing and witnesses; (4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title [28 USCS § 1923];(6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828]. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

FDUTPA. Moreover, this Court enjoined Defendants from engaging in the deceptive conduct and entered an order including extensive injunctive relief against them.

Likewise, the doctrine of sovereign immunity also precludes seeking the Receiver's fees and attorney costs from co-Plaintiff, State of Florida unless waived, which it is not. "Article X, section 13 of the Florida Constitution provides absolute sovereign immunity for the state and its agencies absent waiver by legislative enactment or constitutional amendment." *Ingraham By & Through Ingraham v. Dade County Sch. Bd*., 450 So. 2d 847, 848 (Fla. 1984). In Florida, sovereign immunity is waived only if expressly provided in the language of a statute or in the state constitution. *See Ashworth v. Glades County Bd. of County Commissioners*, 217CV577FTM99MRM, 2017 WL 6344209, at *2 (M.D. Fla. Dec. 12, 2017) (holding that inclusion of statutory provision allowing for the potential recovery of pain and suffering damages was not an indication that the Florida legislature intended to waive sovereign immunity under the statute); *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp*., 908 So. 2d 459, 471 (Fla. 2005) ("Only the Legislature has authority to enact a general law that waives the state's sovereign immunity" and "waiver will not be found as a product of inference or implication.") "[W]hile an exemption must be expressly granted, the State enjoys sovereign immunity unless immunity is expressly waived." *City of Key W. v. Florida Keys Cmty. Coll*., 81 So. 3d 494, 497–98 (Fla. 3d DCA 2012) (holding that state college was exempt from paying city stormwater utility fees because sovereign immunity in relation to paying the fees wasn't expressly waived by statute; see section 768.28, Fla. Stat. (statute explicitly waives sovereign immunity for specific torts.)

11

Because Defendants have not pointed to a waiver of sovereign immunity in the instant case, their objections to the application for receiver's fees and expenses fail as a matter of law and must be rejected.

**IV.      CONCLUSION**

The Receiver's costs and attorney fees are properly paid from the Receivership estate, as designated in the Court's prior orders, and for all of the reasons stated above, this Court should reject Defendants' Opposition to Third Application for Receiver's Fees and Expenses.

Dated: July 9, 2019                          Respectfully submitted,

/s/ Robin L. Rock
ROBIN L. ROCK
Trial Counsel
SANA C. CHRISS
Trial Counsel
HAROLD E. KIRTZ
Trial Counsel
Federal Trade Commission
Southeast Region
225 Peachtree Street, N.E., Suite 1500
Atlanta, GA 30303
Telephone:  404-656-1368 (Rock)
                      404-656-1364 (Chriss)
                      404-656-1357 (Kirtz)
Facsimile:  404-656-1379
Email:  rrock@ftc.gov; schriss@ftc.gov;
            hkirtz@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


ASHLEY MOODY
ATTORNEY GENERAL

STATE OF FLORIDA

s/Genevieve Bonan
By: GENEVIEVE BONAN
Assistant Attorney General
Fla. Bar No. 109539
Office of Attorney General

12

Consumer Protection Division
Genevieve.Bonan@myfloridalegal.com
1515 N. Flagler Drive, Ste. 900
West Palm Beach, FL 33401
Phone: (561) 837-5007
Attorneys for Plaintiff